[Civ. No. 16532. First Dist., Div. One. Mar. 21, 1956.]

ELMER F. REMMER et al., Appellants, v. GLENS FALLS INDEMNITY COMPANY (a Corporation), Respondent.

Spurgeon Avakian for Appellants.

Bronson, Bronson & McKinnon for Respondent.

PETERS, P. J.—Plaintiffs filed this action against the Glens Falls Indemnity Company claiming that they had incurred a liability for which the company was required to indemnify them under the terms of a policy issued by defendant. The trial court found that the damages involved occurred after the policy was cancelled, and for that reason were not covered by the policy. From a judgment for the defendant plaintiffs appeal.

Plaintiffs own a lot in Contra Costa County. A Mr. and Mrs. Morris own a lot contiguous to that of plaintiffs on the downhill side of plaintiffs' lot. During the year 1947 the plaintiffs graded and filled portions of their lot. On January 21, 1952, large quantities of earth and rock slid from the fill on plaintiffs' property onto the property of the Morrises. The plaintiffs became obligated to reimburse the Morrises for part of that damage. The question presented is whether that loss was covered by the policy in question.

That policy, a comprehensive personal liability policy, was issued to the plaintiffs on October 26, 1945, and was for a three-year period. The policy was cancelled on January 15, 1948, and has never been renewed. Thus, the policy was in effect when plaintiffs, in 1947, graded and filled their property, but was not in effect in January of 1952 when the slide occurred that damaged the property of the Morrises. The policy contained the following agreements on the part of defendant:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law . . . for damages because of injury to or destruction of property, including the loss of use thereof."

It also contained the agreement of defendant, insofar as "such insurance as is afforded by the other terms of this policy," to

"(a) defend in his name and behalf any suit against the insured alleging such injury, . . . or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . .

"(b) pay . . . all costs taxed against the insured in any such suit, . . . all interest accruing after entry of judgment . . ."

Another provision of the policy was to the effect that "This policy applies only to occurrences during the policy period."

The term "occurrence" is defined in the policy as "an accident, or a continuous or repeated exposure to conditions, which results in injury during the policy period, provided the injury is accidentally caused. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence."

After the slide had occurred in January of 1952, the Morrises, on April 18, 1952, brought suit against plaintiffs. Plaintiffs notified defendant of the filing of this suit, and urged that, under the policy, they were entitled to have defendant undertake plaintiffs' defense of that suit. The defendant refused such defense on the ground that the claims made by the Morrises were not based on any "occurrence" happening while the policy was in effect.

The complaint in *Morris* v. *Remmer* alleged that the Remmers:

"On a date unknown . . . but prior to the 21st day of January, 1952, . . . negligently and carelessly caused the natural contours of Lot 8 to be altered and changed, . . . and negligently and carelessly placed . . . [many hundreds of tons of earth and rock] on the hillside at a point on or near where the above described natural canyon or gully discharged from Lot 8 to Lot 9, without securing the same, and without taking reasonable precautions, or any precautions or steps to prevent its movement or encroachment onto or upon Lots 9 or 60, with the result that said canyon or gully became filled and blocked, and the aforesaid mass of earth and rocks became perilously poised on the hillside above both Lots 9 and 60; ever since the date upon which said changes and alterations were so negligently and carelessly caused by defendants, as aforesaid, the defendants . . . continued to negligently and carelessly maintain the said Lot 8 in the manner and condition alleged.

"On or about the 21st day of January, 1952, . . . an unknown number of tons of rock and earth slid from the fill caused by defendants, . . . and then and there followed down . . . the above mentioned natural canyon or gully, through Lot 9, and onto and over Lot 60, . . . thereby damaging and injuring plaintiffs' . . . [property]; on the date hereof said fill has not yet stopped moving, but remains in a continuous process of sliding . . . on to plaintiffs' real property . . ."

In a second count the Morrises averred a cause of action for trespass, while a third cause of action, characterizing the fill as a nuisance, was for an injunction. Both the second and

third causes of action incorporated in substance the above quoted allegations.

In the *Morris* v. *Remmer* case the trial court found that:

"During the early months of the year 1947 the defendants [plaintiffs herein], . . . caused the contours of the Remmer property to be altered in the manner and with the result set forth in . . . [the] complaint, excepting, only, that the Court finds that said work and alterations were not executed in a negligent manner;

"Defendants . . . [the Remmers] continued to maintain their real property in the condition above described, from the early months of the year 1947, throughout the balance of the period ending January 21, 1952, culminating in a slide which occurred on or about said date; and that except for the portion of fill which then gave away and slid . . . have continued to maintain the same thereafter; and . . . [that such] is in danger of further movement and in danger of further engulfing . . . [the Morris] property. . . .

"By the alteration of their said property . . . , defendants . . . [the Remmers] created on their said property a condition which, continuously during all the time since then, has constituted and now does constitute a nuisance in that it has threatened and continues to threaten injury to plaintiffs' said property."

In the *Morris* v. *Remmer* action the Morrises were not entitled to recover from the Remmers for the physical damages caused to their property by the slide, which amounted to $5,000, because the Morrises had received that sum from the contractor who had done the grading and filling of plaintiffs' property in return for a covenant not to sue the contractor, and were, of course, not entitled to a double recovery. Therefore, since the cost of abating the nuisance exceeded the diminution in the value of the Morrises' property caused by the continuance of the nuisance, the court, in *Morris* v. *Remmer*, limited the Morrises to the diminution in value of their property caused by the continuance of the nuisance, the amount being fixed at $2,000. Thereupon, the Remmers brought this present action against the insurance company to recover the $2,000, plus interest, awarded to the Morrises, $1,600 expended by them as attorney's fee, and $173.09 costs, all expended by them in defending the action by the Morrises. They also pray for a reasonable fee for prosecuting the instant action.

In the instant case the court found the facts substantially as summarized above and concluded:

"The complaint and judgment in said action* of Morris vs. Remmer were based upon an occurrence which took place at a time not within the period of the said policy of insurance which had been issued to . . . [the Remmers] on the 26th day of October, 1945 and which had been cancelled on the 15th day of January, 1948." In a memorandum opinion the trial judge, the Hon. Hugh Donovan, spelled out his theory in the following language:

"The damage complained of was the present threat to, and depreciation of, the Morris land caused by the current maintenance of the balance of the rocks. This damage occurred after the policy was cancelled in 1948."

From the judgment that they were entitled to nothing as against defendant, plaintiffs appeal on the judgment roll.

There is no merit in the appeal. ▮ The general rule is that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged. (*Farmers Coop. Soc. No. 1* v. *Maryland Cas. Co.*, (Tex.Civ.App.) 135 S.W.2d 1033; *Tulare County Power Co.* v. *Pacific Surety Co.*, 43 Cal.App. 315 [185 P. 399] ; *Berger Bros. Electric Motors* v. *New Amsterdam Cas. Co.*, 293 N.Y. 523 [58 N.E.2d 717, 156 A.L.R. 1281] ; *Export S. S. Corp.* v. *American Ins. Co.*, 106 F.2d 9; *Protex-A-Kar Co.* v. *Hartford Acc. etc. Co.*, 102 Cal.App.2d 408 [227 P.2d 509] ; *Aetna Life Ins. Co. of Hartford, Conn.* v. *Maxwell*, 89 F.2d 988.) This general rule is adopted by the insurance policy here involved because it defines an "occurrence" insured against as "an accident, or a continuous or repeated exposure to conditions, which results in injury during the policy period."

Appellants' argument is that the action in *Morris* v. *Remmer* was for damages caused by a nuisance created in 1947, and, therefore, the "occurrence" was created during the policy period. It is true that the findings of fact in *Morris* v. *Remmer* declare that the nuisance was created by the fill of 1947, and was a continuing nuisance, and that it was by reason of this nuisance that the Morrises' property diminished in value. But this is not a complete or proper description of what was involved in the case of *Morris* v. *Remmer*. The pleadings in that action, partially quoted above, demonstrate that the damage, injury and cause of action there alleged were for the

maintenance and continuance of a nuisance at the time the action was filed, April of 1952. The action of *Morris* v. *Remmer* was for the maintenance and existence of that nuisance. That was the nuisance that constituted the "occurrence" for which damages were allowed. This "occurrence" was in 1952, and therefore not within the coverage.

The general rule is not changed by reason of the fact that the case of *Morris* v. *Remmer* was for a nuisance rather than damages for injury to the property. Of course, the creation and maintenance of a nuisance is a continuing injury for which a new cause of action continuously arises. (*Kafka* v. *Bozio,* 191 Cal. 746 [218 P. 753, 29 A.L.R. 833]; *Phillips* v. *City of Pasadena,* 27 Cal.2d 104 [162 P.2d 625].) Here, in *Morris* v. *Remmer,* the court found that the nuisance was a continuing one. But to determine the question of the liability of respondent insurance company we must determine when the cause of action in the case of *Morris* v. *Remmer* accrued. It is because of the judgment against the Remmers in that case that this present action is brought. We are not interested in ascertaining what theory the Morrises could have sued upon, but on what theory they did sue upon. This is to be determined from the pleadings. Clearly, that complaint, without ambiguity, was for damages for the present nuisance, currently maintained and currently threatening injury, and for its abatement. The cause of action pleaded was necessarily, therefore, not for an "occurrence" happening within the time limits of the policy. The fact that the Morrises were suing for the present maintenance of a present nuisance is demonstrated not only by the allegations of the complaint, but also by the fact that in 1952 the Morrises could not have successfully sued for damages for the original creation of the nuisance in 1947, because such cause of action would have been barred by either the three or four-year statute of limitations. (Code Civ. Proc., §§ 338, subd. 2, and 343.)

It follows that, although the nuisance was an injury when created in 1947 for which the Remmers were liable, and although this injury occurred during the effective term of the policy, no action was ever brought for that injury. The complaint brought against appellants by the Morrises was for a presently (1952) existing damage which did not occur during the effective date of the policy. As already pointed out, it is not the happening of the wrongful act that is covered by the policy, but the damage flowing therefrom. To

be covered by the policy the damage sued for must have occurred during the policy. The damage sued for in *Morris* v. *Remmer* did not so occur. Therefore, the policy does not cover the damage.

█ Appellants also contend that, regardless of whether the policy covered the damage involved, respondent was obligated by the policy to undertake the defense of the appellants in the action brought against them by the Morrises. The defense clause of the policy has already been quoted. It required the respondent to defend the insured in any action alleging an injury under the policy "even if such suit is groundless, false or fraudulent." Under such a clause it is the duty of the insurer to defend the insured when sued in any action where the facts alleged in the complaint support a recovery for an "occurrence" covered by the policy, regardless of the fact that the insurer has knowledge that the injury is not in fact covered. (*Lee* v. *Aetna Casualty & Surety Co.*, 178 F.2d 750; *Employers Mut. Liability Ins. Co. of Wis.* v. *Hendrix*, 199 F.2d 53.) But it is equally true that the insurer is not required to defend an action against the insured when the complaint in that action shows on its face that the injury complained of is not only not covered by, but is excluded from, the policy. (*Farmers Coop. Soc. No. 1* v. *Maryland Cas. Co.*, (Tex.Civ.App.) 135 S.W.2d 1033.) That is the present case.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.