ENDO LABORATORIES, INC., et al.,
Plaintiffs/Appellees,

v.

The HARTFORD INSURANCE GROUP,
et al., Defendants/Appellants.

Nos. 83–2527, 83–2545.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1984.

Decided Nov. 19, 1984.

Stephen Stublarec, Pillsbury, Madison & Sutro, San Francisco, Cal., for plaintiffs/appellees.

Elliot L. Bien, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants/appellants.

Before TANG and CANBY, Circuit Judges, and GADBOIS,* District Judge.

GADBOIS, District Judge:

The Hartford Accident and Indemnity Co. provided a "Comprehensive General Liability Insurance" policy to Endo Laboratories, Inc. and to E.I. DuPont de Nemours &

---

* The Honorable Richard A. Gadbois, Jr., United States District Judge for the Central District of California, sitting by designation.

Company, Endo's parent corporation. The policy provided that Hartford would pay on behalf of Endo all amounts which it became legally obligated to pay because of bodily injury sustained by any "person" occurring during the policy period, which ended on March 1, 1975. The policy was allowed to lapse as of that date, at which time Endo and DuPont became self-insured.

Kristian Moore was born on August 1, 1975, five months after the policy's lapse. In his 1977 action against Endo in the Northern District of California he alleged that his mother had taken Coumadin, an anticoagulant drug manufactured and distributed by Endo, during the first trimester of her pregnancy and that he thereby suffered birth defects. The *Moore* action was settled for $500,000 before the completion of the trial, with Endo and Hartford each contributing $250,000. Evidence had been presented that the use of Coumadin is contraindicated during pregnancy because it can cause fetal death, hemorrhage, or birth defects. Additional expert testimony was to the effect (i) that Moore suffered "warfarin embryopathy," a syndrome found in infants whose mothers have been exposed to Coumadin or other warfarin-based drugs during pregnancy and (ii) that prenatal injuries can be inflicted almost simultaneously with the ingestion of Coumadin by a pregnant woman.

Endo filed this diversity action in September of 1978 for declaration of its rights under the policy and reimbursement of its $250,000 contribution to the settlement of the *Moore* action. By counterclaim, Hartford contended non-coverage and asked for return of its own contribution. Hartford's motion for summary judgment on the ground that Moore was not a "person" during the policy period was denied. The district court conducted a bench trial of the action, resulting in judgment for Endo in the sum of $250,000 and interest, which is the subject of this appeal. Jurisdiction is afforded us by 28 U.S.C. § 1291 (1983).

At the heart of the district court's decision, effectively reached in ruling on the summary judgment motion, was that California Civil Code section 29 designates an unborn fetus as a "person" for purposes of its rights with respect to actionable harm done to it *in utero,* and accordingly the fetus here was a "person" under the policy, notwithstanding its lapse some five months before the child's birth.

The questions presented may be succinctly stated:

1. Did the district court properly conclude, by reference to California Civil Code section 29, that Kristian Moore was a person within the meaning of the Hartford policy?

2. Does the record support the district court's finding that Moore sustained bodily injury during the policy period?

3. Is Hartford estopped to deny coverage?

*Legal Issue*

The central issue resolved by the district court was whether "bodily injury," as defined in the insurance policy, could be sustained by a fetus who was later born alive after the policy had lapsed. The decision in this diversity case was, of course, governed by the court's perception of California law.

The Hartford policy provided coverage as follows:

> The company will pay on behalf of the *insured* all the sums which the *insured* shall become legally obligated to pay as *damages* because of
>
> Coverage A—*bodily injury* or
>
> Coverage B—*property damage*
>
> to which this insurance applies, caused by an *occurrence,* and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of the *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent .... (emphasis in original).

The terms "bodily injury" and "occurrence" are defined in the Hartford policy as follows:

> "bodily injury" means bodily injury, sickness or disease sustained by any *person*

which occurs during the policy period, including death at any time resulting therefrom; (emphasis added).

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured.* (emphasis in original).

In its ruling the district court relied on California Civil Code section 29, which provides in pertinent part:

A child conceived, but not yet born, is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth.

Denying Hartford's motion for summary judgment, the court stated:

This was an action for prenatal injuries by a child who was later born alive. California Civil Code section 29 clearly establishes that Kristian Moore was an "existing person" for the purposes of his action against plaintiff and defendant. It would be wholly inconsistent with the language of that statute for this Court to hold that Kristian Moore was not a "person" capable of sustaining bodily injury for the purposes of coverage under the policy. For this reason, defendant's motion for summary judgment is hereby denied.

This conclusion was reiterated in the district court's Memorandum of Decision after trial. We review that decision under the independent *de novo* standard. *Matter of McLinn,* 739 F.2d 1395 (9th Cir.1984) (en banc).

 We believe the district court correctly stated the law of the State of California. Obviously, Moore was a "person" with respect to his underlying tort action against Endo. It would be incongruous to say that he was not such for the purposes of the policy insuring Endo against precisely that exposure. While "person" is not defined in the policy, Hartford is charged with the knowledge that a fetus later born

alive is a person for purposes of an action for prenatal injury.

 It is a well-settled principle of California law that its laws are considered to be a part of an agreement. "[A]ll applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." *Alpha Beta Food Markets, Inc. v. Retail Clerks Union Local 770,* 45 Cal.2d 764, 771, 291 P.2d 433, 437 (1955), *cert. denied,* 350 U.S. 996, 76 S.Ct. 547, 100 L.Ed. 861 (1956); *see also Grubb v. Ranger Insurance Co.,* 77 Cal.App.3d 526, 143 Cal. Rptr. 558, 559 (1978); *Mary Len Mine v. Industrial Accident Commission,* 64 Cal. App.2d 153, 148 P.2d 106 (1944).

California Civil Code section 29 was enacted in 1872 to create a cause of action for the benefit of the child, and to protect its interests in the event of its subsequent birth. *Norman v. Murphy,* 124 Cal.App.2d 95, 98, 268 P.2d 178, 180 (1954). The word "interests" as used in section 29 means anything that is profitable or beneficial to the child, *Kyne v. Kyne,* 38 Cal.App.2d 122, 127, 100 P.2d 806, 809 (1940), including the right to compensation "for personal injuries wrongfully inflicted by the willful or negligent acts of another person." *Scott v. McPheeters,* 33 Cal.App.2d 629, 632, 92 P.2d 678, 680 (1939).[1]

Since Hartford drafted the policy with the presumed knowledge of section 29 and failed to provide a definition for the term "person", it cannot now urge that the statutory definition should not be applied to the very harm against which it insured.

Hartford counters this proposition with arguments that (i) section 29 is a tort statute and this is a contract case, and (ii) accrual of the underlying cause of action occurred subsequent to lapse of the policy.

---

1. Entirely too facile is Hartford's position that § 29 comes into play only when "interests" at stake are those of the fetus as distinguished from those of Endo. Insurance coverage for prenatal injury is in fact a substantial "interest" of the fetus eventually born alive.

**1268**

■ With respect to the first contention, it is certainly true that words used in an insurance policy should be interpreted according to the plain meaning that a lay person would normally attach to them and that ambiguities in the document should be resolved against the insurer. To focus these principles upon the question here at issue, Hartford cites a number of cases to the effect that a fetus is not, in various contexts, a "person." *Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975); *Keeler v. Superior Court of Amador County,* 2 Cal.3d 619, 87 Cal.Rptr. 481, 470 P.2d 617 (1970); *People v. Carlson,* 37 Cal.App.3d 349, 112 Cal.Rptr. 321 (1974). These authorities are clearly distinguishable under a "reasonable expectation" analysis. In *Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764 (1982), relied upon quite correctly by Hartford for its "plain meaning" holding, the California Supreme Court observed:

> When confronted with standardized provisions in a form insurance contract, the primary focus of our inquiry is on the reasonable expectations of the insured at the time he purchased the coverage. The ordinary expectation of one who purchases liability insurance is that he will be covered for any liabilities incurred as a result of the activity to which the policy relates.

30 Cal.3d at 809, 180 Cal.Rptr. at 633, 640 P.2d 764.

■ It is a question of law whether an insured's expectation of coverage is reasonable. *Wolf Machinery v. Insurance Co. of North America,* 133 Cal.App.3d 324, 183 Cal.Rptr. 695 (1982). The contract in this case was a standardized general liability insurance policy. Considering the nature of Endo's business and liabilities potentially incurred by that business, it is surely reasonable that the insured believed that a "person" who could sustain actionable "bodily injury" under the Hartford policy includes—at least in California—a fetus. It is foreseeable, after all the DES and Thalidomide litigation in recent years, that

a drug manufacturer may be subject to liability for its product that causes injuries to a child during gestation and equally reasonable for Endo to expect Hartford to afford coverage for that liability.

■ Hartford also contends that, since Moore's prenatal injuries were not and could not be discovered until birth, it was the birth with injuries which constituted an "occurrence" under the policy. *Ergo,* Moore's cause of action did not accrue under section 29 until he was born alive, and Endo's liability did not arise until such time, several months after the policy had lapsed. Hartford's argument on this point relies heavily on the reasoning of *Remmer v. Glens Falls Indemnity Co.,* 140 Cal. App.2d 84, 295 P.2d 19 (1956), in which the court found that a land slide occurring after the policy expired was the actionable occurrence, although the causative negligent land fill work had been done during the policy period, five years earlier. The decision can be easily distinguished from this case. The suit for damages in *Remmer* was based on a present nuisance—the land slide—rather than on any event during the policy period, such as the negligent work done on the property. *Id.* The instant action is directed very much to injury and damage sustained during the gestation period of the plaintiff.

"The general rule, well-established, is 'that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged.'" *Tijsseling v. General Accident Fire & Life Assurance Corp., Ltd.,* 55 Cal.App.3d 623, 626, 127 Cal.Rptr. 681, 683 (1976) (quoting *Remmer,* 140 Cal.App.2d at 88, 295 P.2d at 21). As observed below, the district court found as a fact that the damage to the Moore fetus occurred during the first trimester of pregnancy, and therefore within the policy term.

The *Tijsseling* court noted that the principal purpose of the rule permitting post-

poned accrual of certain causes of action is to protect those parties who are justifiably ignorant of their right to sue. 55 Cal. App.3d at 628, 127 Cal.Rptr. at 684. It also observed, however: "... we find no authority, and none has been offered, which indicates that the rule has any application to the interpretation of insurance contracts." *Id.*

*Findings of Fact*

■ The district court made several findings of fact that were critical to its judgment. Among these were:

Kristian Moore suffered bodily injury by reason of exposure to coumadin ingested by his mother during the first trimester of her pregnancy.

The continuous exposure to the effects of coumadin constitutes an "occurrence" within the policy definition of that term.

The occurrence resulting in bodily injury occurred prior to March 1, 1975, and not on the date of the birth of Kristian Moore.

In this case the preponderance of medical evidence shows the occurrence to be during the period of coverage of defendant's policy.

We review these findings, made at a bench trial, pursuant to Fed.R.Civ.P. 52(a) and may set them aside only if found to be clearly erroneous. They are not clearly erroneous. These findings were supported by solid medical testimony, buttressed by the trial court's familiarity with the record in the underlying action. It is clear from the evidence that Coumadin can damage a fetus concomitantly with ingestion thereof by its mother. The district court found that this occurred, and its conclusions may not be disturbed.

The preceding discussion renders moot the consideration of estoppel of Hartford to deny coverage by reason of its reservation of rights asserted a mere two weeks before trial.

The judgment of the district court is affirmed.