[Nos. B009207, B009416. Second Dist., Div. One. May 29, 1986.]

■SCHRILLO COMPANY, Cross-complainant and Appellant, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, Cross-defendant and Respondent.

## COUNSEL

Irell & Manella, Gregory R. Smith, Thomas W. Johnson, Jr., and Melodie K. Larsen for Cross-complainant and Appellant.

Overton, Lyman & Prince, Hawkins, Schnabel & Lindahl and Kelley K. Beck for Cross-defendant and Respondent.

**OPINION**

**HANSON (Thaxton), J.—**

INTRODUCTION

Cross-complainant Schrillo Company (Schrillo) appeals from the superior court's granting of a motion for summary judgment brought by cross-defendant Hartford Accident and Indemnity Company (Hartford).[1] Schrillo had filed a cross-complaint for declaratory relief against Hartford which, on the grounds of lack of coverage, had declined to defend or indemnify Schrillo in a separate action brought by a third party against Schrillo. We affirm.

BACKGROUND

Schrillo, principally a manufacturer of components used in the fabrication and assembly of aircraft parts, began the manufacture of power steering units for installation in Ford Trucks late in 1972 and discontinued the manufacture of the units in early 1975. On or about May 21, 1975, a power steering unit (manufactured by Schrillo prior to March 1975) was shipped to a distributor in the Minnesota area and, on August 18, 1975, installed in the truck of Larry A. Senger. In 1981, Mr. Senger filed a civil action against Schrillo[2] alleging that on May 15, 1977, he had been critically injured when his truck crashed as a result of a "lock-up" in Schrillo's power steering unit. Mr. Senger alleged that Schrillo was negligent in the manufacture of the power steering unit which had been installed in his truck.

Schrillo tendered the defense of the Senger litigation to Hartford who declined to defend or indemnify Schrillo in the Senger action on the grounds that no bodily injury resulted within either of its policy periods. Schrillo thereafter settled the Senger litigation for $400,000.

In September 1983, Schrillo's excess carrier, Highlands Insurance Company (Highlands), filed a complaint for declaratory relief against Schrillo and Hartford alleging that Highlands was required neither to defend nor indemnify Schrillo in the Senger litigation. Schrillo cross-complained for

---

[1]Schrillo filed two appeals (Sept. 20, 1984, and Nov. 13, 1984) from the same judgment—numbers B009416 and B009207. Schrillo's application for consolidation of these duplicate appeals was granted. In accordance with California Rules of Court, rule 367, the master file is B009207, the lowest number.

[2]Larry A. Senger v. Fosston Motors, Inc. and Schrillo Company, Inc. in the District Court of the Ninth Judicial District in the State of Minnesota.

declaratory relief against Highlands and Hartford alleging that it was entitled to reimbursement from Highlands and/or Hartford for costs incurred in defending and settling the Senger action. Hartford moved for summary judgment asserting that it had no duty to indemnify or defend Schrillo since Mr. Senger's alleged injury occurred in 1977, two years after the termination of Hartford's policy period. On July 24, 1985, the Los Angeles Superior Court (Hon. Irving A. Shimer, judge presiding) granted cross-defendant Hartford's motion for summary judgment.[3] Schrillo appeals.

## FACTS

The following facts are undisputed: 1) That the two consecutive liability policies of insurance (identical in content) issued by Hartford to Schrillo covered the period from May 17, 1973, to April 17, 1975; 2) that Schrillo manufactured the power steering unit giving rise to the Senger action during the Hartford policy period; 3) that on approximately May 21, 1975, after the expiration of the last Hartford policy, Schrillo shipped the power steering unit giving rise to the Senger litigation to a distributor in Minnesota; and 4) that Mr. Senger's alleged bodily injuries occurred on May 15, 1977.

## ISSUES

On appeal, cross-complainant Schrillo, in brief, contends that the Hartford policy covers the Senger claim because the wordage in the policy is ambiguous and not sufficiently conspicuous, plain and clear to exclude coverage.

Cross-defendant Hartford, in sum, asserts that the Hartford policy is not ambiguous, that the wordage is conspicuous, plain, and clear and that the Senger claim arose outside the coverage period of the policy.

Thus, the determinative issues raised on appeal can be distilled into two rhetorical questions: 1) whether or not Hartford's policies unambiguously, in conspicuous, plain and clear language, limits coverage to injuries occurring within the policy periods; and 2) whether or not Hartford's "Restrictive Hazards" endorsement, as raised the first time on appeal, can reasonably be construed to provide coverage for injuries occurring outside Hartford's policy period.

---

[3]The superior court's minute order of July 25, 1984, states: "The policy is aunambigious [sic]. *Sylla** does not represent the law. Schrillo does not claim to have been misled in any way in the purchase or termination of the policy. [¶] Grant motion. Attorney judgment. The complaint remains. Separate judgment is authorized on the cross-complaint."

*Sylla* v. *United States Fid. & Guar. Co.* (1976) 54 Cal.App.3d 895 [127 Cal.Rptr. 38].

Discussion

I.

*Does the Hartford policy unambiguously limit, in conspicuous, plain and clear language, coverage to injuries occurring within the policy period?* Yes.

"An insurance policy is a contract, and when the terms are plain and unambiguous, it is the duty of the court to hold the parties to such contract. The courts will not indulge in a forced construction of an insurance policy so as to fasten a liability on the insurance company which it has not assumed." (*St. Paul Fire & Marine Ins. Co.* v. *Coss* (1978) 80 Cal.App.3d 888, 896 [145 Cal.Rptr. 836].)

"It is, of course, well established that an insurer has a right to limit the policy coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 431-432 [296 P.2d 801, 57 A.L.R.2d 914]; *Kincer* v. *Reserve Ins. Co.* (1970) 11 Cal.App.3d 714, 718 [90 Cal.Rptr. 94])." (*VTN Consolidated, Inc.* v. *Northbrook Ins. Co.* (1979) 92 Cal.App.3d 888, 892 [155 Cal.Rptr. 172].)

"[A]bsent a clear indication to the contrary, words in an insurance policy are to be read in their plain and ordinary sense." (*Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 775 [215 Cal.Rptr. 416].)

In the case at bench, the two consecutive Hartford policies which insured Schrillo provided liability coverage in identical terms. The face sheet (or jacket) of the "**CASUALTY INSURANCE POLICY**" issued by Hartford to Schrillo, under the headings "**General Policy Provisions—Form 8117**"—"**COVERAGE**" reveals the following language:

"Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto."

Thereunder, and under the word "**DEFINITIONS**," are listed the following definitions relevant to this case:

"'**BODILY INJURY**' means bodily injury, sickness or disease sustained by any person *which occurs during the policy period*, including death at any time resulting therefrom; [Italics added.]

"'**OCCURRENCE**' means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the insured;'' (Italics original.)

Under "**COMPREHENSIVE GENERAL LIABILITY INSURANCE COVERAGE PART**" appears the following:

"I. COVERAGE A—BODILY INJURY LIABILITY

" COVERAGE B—PROPERTY DAMAGE LIABILITY

"The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of Coverage A—*bodily injury* or Coverage B—*property damage* to which this insurance applies, caused by an *occurrence, . . .*" (Italics original.)

We note that each time a defined term is used in the policy it is italicized. We perceive nothing ambiguous, inconspicuous or unclear about the above-quoted plain language.

The case of *Sylla* v. *United States Fid. & Guar. Co., supra,* 54 Cal.App.3d 895,[4] heavily relied upon by Schrillo is not only factually distinguishable (involving a specialized garagekeeper's policy)[5] but also does not represent the weight of authority. The other cases cited by Schrillo in its opening and reply briefs are either factually distinguishable, not in point, or unpersuasive.

---

[4] In *Sylla* the trial court dismissed a complaint by a used car dealer and repairman for breach of contract and for a declaration that its liability insurer was obligated to defend and indemnify him, after sustaining the insurer's demurrer thereto without leave to amend. It appeared from the complaint that the dealer was the defendant in an action by the owner of a car purchased from him. The owner had an accident with the auto and was suing on the theory of strict liability, claiming that the car either had been in defective condition at the time of the sale, or in the alternative, that the dealer was negligent in making repairs. The insurer had refused to defend and indemnify the dealer on the grounds that although the liability policy had been in effect at the time of the sale of the automobile, it was not in effect at the time of the auto accident. The policy covered "occurrences arising out of garage operations." "Occurrence" was defined by the policy as "an accident during the policy period."

The Court of Appeal reversed, holding that the complaint stated facts sufficient to constitute a cause of action for declaratory relief, that demurrer was not appropriate, and that the insurer was obligated to defend and indemnify the insured. The court held that the policy's definition of "occurrence" as an "accident," when viewed in light of the insured's operation as a used car dealer and repairman, was either meaningless or at the least ambiguous or uncertain, and that the ambiguity must be construed in favor of the insured.

[5] In *Atlantic Mutual Ins. Co.* v. *Travelers Ins. Co.* (1983) 147 Cal.App.3d 1054 [195 Cal.Rptr. 476], the court refused to apply *Sylla*'s interpretation of the garagekeeper's liability policy before it when the language of the policy was "virtually identical" to that in *Sylla*.

■ "The [well settled] general rule is that *the time of the occurrence of an accident* within the meaning of an indemnity policy is not the time that the wrongful act was committed, but *the time when the complaining party was actually damaged.* [Citations.]" (Italics added.) (*Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84, 88 [295 P.2d 19];[6] see also *Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835, 846 [140 Cal.Rptr. 493]; *Arant* v. *Signal Ins. Co.* (1977) 67 Cal.App.3d 514, 516 [136 Cal.Rptr. 689]; *Tijsseling* v. *General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623, 626 [127 Cal.Rptr. 681]; *Kaiser Foundation Hospitals* v. *North Star Reinsurance Corp.* (1979) 90 Cal.App.3d 786, 790, fn. 5 [153 Cal.Rptr. 678].)

In *Remmer* v. *Glens Falls Indemn. Co., supra,* 140 Cal.App.2d 84, 88-90, the reviewing court was faced with a policy with a virtually identical definition of an "occurrence" as in the instant case.

In *Remmer,* the insured had graded and filled some of his property in 1947 which changed its natural contours. As a result, in January 1952, an earth and rock slide from the insured's property overran the property of a neighbor, who filed suit against the insured for damages on April 18, 1952. Glens Falls, however, provided liability coverage to the insured that was only effective from October 26, 1945, to its cancellation on January 15, 1948. Therefore, it denied coverage on the ground that the claim was not based upon an "occurrence" taking place within the policy period. On appeal, the *Remmer* court concluded this denial was correct, stating at page 88: "The general rule is that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time that the wrongful act was committed, but the time when the complaining party was actually damaged. [Citations.] This general rule is adopted by the insurance policy here involved because it defines an 'occurrence' insured against as 'an accident, or a continuous or repeated exposure to conditions, which results in injury during the policy period.'" (See also *California Union Ins. Co.* v. *Landmark Ins. Co.* (1983) 145 Cal.App.3d 462, 470 [193 Cal.Rptr. 461]; *Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 328 [183 Cal.Rptr. 695]; *Employers Casualty Co.* v. *Northwestern Nat. Ins. Group* (1980) 109 Cal.App.3d 462, 469 [167 Cal.Rptr. 296]; *Maples* v. *Aetna Cas. & Surety Co.* (1978) 83 Cal.App.3d 641, 647-648 [148 Cal.Rptr. 80].)

In *Maples* v. *Aetna Cas. & Surety Co., supra,* 83 Cal.App.3d 641, the insured had brought an action for declaratory relief against its insurer,

---

[6]The *Remmer* court held this general rule was adopted by the Glens Falls policy because it defined an "occurrence" insured against as "an accident, or a continuous or repeated exposure to conditions, which results in injury during the policy period."

contending it was covered for a fire occurring after the termination of the insurer's policy because the insured's boiler installation work had been performed within the policy period. After examining at some length both California and out-of-state authorities on this issue, including *Sylla* v. *United States Fid. & Guar. Co., supra,* 54 Cal.App.3d 895 and *Oil Base, Inc.* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 378 [76 Cal.Rptr. 594], the *Maples* court rejected this contention, concluding at pages 647-648: "Review of this seemingly unbroken line of authority finding that the term 'accident' unambiguously refers to the event causing damage, not the earlier event creating the potential for future injury, leads to the question of how the courts in *Oil Base* and *Sylla* were able to reach results contradicting this line of authority. Neither *Oil Base* nor *Sylla* acknowledges any of the above-cited California or out-of-state authorities, which strongly suggest, that they were not briefed or argued."

The *Maples* court, after reviewing the authorities relied upon in *Oil Base* and *Sylla* concluded at page 650 that: "*Oil Base* and *Sylla* have taken a path diverging from that followed by a long line of authority. While the trial court was justified . . . in following *Sylla* along that path, this court need not extend that misstep."

In *California Union Ins. Co.* v. *Landmark Ins. Co., supra,* 145 Cal.App.3d 462, at page 470, the court said: "[W]ithout limitation or qualification, *Remmer,* as a 'well-established' general rule lives on. Landmark invites our attention to a case decided 20 years later [*Tijsseling, supra,* 55 Cal.App.3d 623] in which *Remmer* was cited as persuasive, if not controlling, authority."

In *Wolf Machinery Co.* v. *Insurance Co. of North America, supra,* 133 Cal.App.3d 324, 328, plaintiff [Lopez] sued Wolf Machinery, the distributor of a gear drive press which injured plaintiff during her employment, on theories of negligence and strict liability. Wolf Machinery had sold the press during North American's policy period of May 1, 1967, to May 1, 1968. Wolf Machinery claimed it reasonably anticipated coverage under this policy since its sole business was the sale of machinery. The reviewing court rejected this contention, reasoning at page 328: "In this case, the injury to plaintiff Lopez occurred after the policy period. No accident resulting in bodily injury occurred during the policy period. The time of occurrence of an accident for purpose of an indemnity insurance policy is when the person is actually injured. [Citations.] [¶] Appellants contend that the case of *Sylla* v. *United States Fid. & Guar. Co., supra,* 54 Cal.App.3d 895 supports its contention, and urge that the doctrine of reasonable expectation of coverage would save their position. A reading of the authorities convinces us that the doctrine of reasonable expectation of coverage comes into play only

where there is an ambiguity present in the policy. [Citations.] In this case we find no ambiguity, and accordingly, the reasonable expectation of coverage doctrine is not applicable. There being no ambiguity in the language of the policy presently under consideration, the court should give the unambiguous terms of the policy effect."

In *Employers Casualty Co.* v. *Northwestern Nat. Ins. Group, supra,* 109 Cal.App.3d 462, the insured was a manufacturer of mobile homes. In connection with this business, it acquired a diesel tractor vehicle on June 12, 1974, which it sold on October 7, 1975. Northwestern provided liability coverage for the insured from October 1, 1974, to October 1, 1975. On June 25, 1976, the tractor was involved in a highway accident which resulted in a wrongful death claim against the insured. The parties stipulated in an agreed set of facts that any acts of negligence by the insured's agents all took place during the period in which the insured owned the tractor. This court applied the general rule that the time of the occurrence is determined by when the claimant was actually damaged, and concluded that Northwestern had no liability under its policy since the "bodily injury" did not occur within Northwestern's policy period, stating at pages 468-469: "This raises the primary issue in connection with the potential liability of Northwestern under its policy, namely, whether the coverage by Northwestern extended to injuries which occurred subsequent to the policy period where the acts leading to the injuries may have occurred during the time when the policy was still in effect. This issue was faced by the Court of Appeal in *Maples* v. *Aetna Cas. & Surety Co.* (1978) 83 Cal.App.3d 641 [148 Cal.Rptr. 80], where similar provisions in Aetna's policy were involved. The court in *Maples* said at page 644: 'Stated simply, the primary issue presented to the trial court and raised on this appeal is whether the coverage by Aetna extended to injuries occurring subsequent to the policy period where the acts leading to the injuries occurred during the time when the policy was in effect. The answer is *no coverage* dictated by the general rule, well established, "that the time of the occurrence of an *accident* within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was *actually damaged.*"'" (Italics original.)

Turning to the case at bench, it is uncontested that the two consecutive Hartford liability policies covered the time span from May 17, 1973, to April 17, 1975. The two policies, identical in terms, contains unambiguous terms, expressly limiting coverage to injuries occurring during the policy period in the following words: "*Bodily injury,* sickness or disease *sustained by any person which occurs during the policy period,* including death at any time resulting therefrom; . . ." (Similarly, the policies define

the term "property damage" to mean: "(1) Physical injury to or destruction of tangible property *which occurs during the policy period, . . .* or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period; . . ." (Italics added.)

In sum, the Hartford insurance policy evinces the mutual understanding and agreement of the parties that the risk taken by Hartford was limited to those instances in which the injuries claimed occurred during the policy period. In the case at bench, it is uncontradicted that the "accident" which was the basis for the Senger action "occurred" on May 15, 1977, over two years following the expiration of the Hartford policy coverage (April 17, 1975). Moreover, the power steering unit which allegedly caused the injuries was shipped on approximately May 21, 1975, over a month after the expiration of the Hartford policy coverage.

However, assuming arguendo that the Hartford policy's limiting and exclusionary provisions were ambiguous and not conspicuous, plain and clear (as asserted by Schrillo), we hold as a matter of law that Schrillo could not reasonably have expected coverage for accidents or injuries occurring after the expiration of the policy period.

■ Whether a party had a reasonable expectation of coverage is an issue of law, not one of fact. (*Wolf Machinery Co.* v. *Insurance Co. of North America, supra,* 133 Cal.App.3d 324, 329; see also *Endo Laboratories, Inc.* v. *Hartford Ins. Group* (9th Cir. 1984) 747 F.2d 1264, 1268.) ■ The declaration of Mr. Edward Schrillo, president of Schrillo, asserts that the company harbored a subjective expectation of coverage. The declaration of Mr. Schrillo does not breathe into the policy the coverage claimed here. Neither Mr. Schrillo's declaration nor other evidence discloses that representations were made by anyone authorized to speak for the carrier (Hartford) which fostered such a subjective expectation. The court below noted in its ruling that Schrillo made no claim it had been misled in any way in the purchase or termination of Hartford's policies. (See fn. 3, *ante.*) There is no allegation or evidence in the record that Hartford or any of its agents provided, or were requested to provide, any coverage advice in connection with Schrillo's termination of Hartford's coverage. The parties are bound by their written contract of insurance. We hold that the language in the Hartford policy is not reasonably susceptible to the interpretation sought by Schrillo.

Finally, Schrillo's assertion for the first time on appeal, in support of its coverage expectation that Hartford's premium for coverage was calculated

not on the basis of units sold but in part on the cost of manufacture, is not supported by the record. The policy of insurance shows a contrary basis for computation of premiums.[7] Here, since the power unit involved in the Senger accident was shipped to a Minnesota distributor more than a month after the expiration of Hartford's last policy period, presumably no premium was charged for the sale of the unit. Nor is there any showing whatsoever that Hartford generally advertised or marketed its liability policy to Schrillo as one specifically affording protection in connection with "after market items."

Accordingly, even if its limitation for injuries occurring within its policy period was not conspicuous, plain and clear, we would hold as a matter of law that Schrillo did not have reasonable expectation of coverage for the Senger claim.

## II.

*Does Hartford's "Products Hazard" endorsement render the policy ambiguous so as to provide coverage for injuries occurring outside the policy period?* No.

The "Products Hazard" endorsement in toto states: "It is understood and agreed that, with respect to the definitions of 'named insured's products' and 'products hazard,' such insurance as is afforded by this policy does not apply to bodily injury or property damage liability arising out of any goods or products *except* power steering units." (Italics added.)

The above endorsement, in plain language, merely eliminates any coverage within the "products hazard" risk which might otherwise exist with respect to any Schrillo products *except* power steering units.

---

[7]The premium computations are reflected on the first page of the "Comprehensive General Liability Insurance Coverage Part" form. The "premium bases" utilized, as reflected in that form, are (c) "remuneration" and (h) "sales." These terms are defined in the policy jacket under the heading "Description of Terms Used as Premium Bases" as follows:

"(d) '[R]emuneration' means the entire remuneration earned during the policy period by proprietors and by all employees of the named insured . . . subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company; (e) 'sales' means the gross amount of money charged by the named insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, . . . ."

The term "products hazard"[8] is defined in the policy jackets along with the definitions of "bodily injury" and "occurrence" and in clear language is tied to "bodily injury" and "property damage" which, in turn, are expressly defined as injuries occurring within the policy period. We see no ambiguity here which would provide coverage for injuries occurring outside the policy period.

In sum, Hartford's "occurrence" policy conspicuously stated its policy period on the declarations page of each policy issued to Schrillo. There was nothing in the language of the coverage provisions, even without resort to the definitions, which reasonably would lead Schrillo to believe there was coverage for injuries "occurring" outside the policy period. "[A]bstract ambiguity is not an authorization to ignore common sense. The insured's expectations of coverage must be *reasonable.*" (*Foremost Insurance Co. v. Eanes* (1982) 134 Cal.App.3d 566, 571 [184 Cal.Rptr. 635].)

## DISPOSITION

The order granting summary judgment is affirmed.

Spencer, P. J., and Devich, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 13, 1986.

---

[8] "'**Products hazard**' defined in the policy includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others; . . . ." (Italics original.)