## Kennerson
### v.
## Lima Bargain Center
*[Cite as 2 AOA 158]*

*Case No. 1-88-62*
*Allen County, (3rd)*
*Decided March 29, 1990*

*Messrs. Cory, Meredith, Witter, Roush & Cheney, Mr. David A. Cheney, Attorneys At Law, 607 Savings Building, P.O. Box 1217, Lima, Ohio 45802-1217, For Appellants.*

*John C. Nemeth & Associates, Mr. John C. Nemeth, Mr. David A. Caborn, Attorneys At Law, 21 East Frankfort Street, Columbus, Ohio, 43206-1069, For Appellee Safeco Insurance Companies.*

SHAW, P. J.

Plaintiffs appeal from a decision entered in the Court of Common Pleas of Allen County granting summary judgment in favor of the defendants. For the reasons that follow, we affirm the judgment of the trial court.

Joseph E. Kennerson and Debra E. Kennerson ("the Kennersons") were the owners and residents of real estate located at 1606 West Elm Street in Lima, Ohio. In December of 1981, the plaintiffs purchased a chimney kit at defendant Lima Bargain Center in Lima, Ohio. The chimney kit was manufactured by defendant Dura-Vent Corporation of Redwood City, California. The chimney kit was installed in the plaintiffs' home as a part of a wood-burning stove which was the heating system in their home.

On January 16, 1983, a fire broke out in the plaintiffs' home, causing personal and real property damage in excess of $50,000. State Farm Fire and Casualty Company, who provided the homeowner's insurance coverage for the Kennersons, paid $52,755.19 for the damage to their personal property and to the structure. By such payment, State Farm became subrogated to the rights of the Kennersons to the extent of their payment.

Subsequently, the Kennersons and State Farm ("plaintiffs") filed a complaint against the Lima Bargain Center, the retail seller of the chimney kit, and Dura-Vent Corporation, the manufacturer and distributor of the chimney kit. Unknown to the plaintiffs at the time of the filing of their complaint, Dura-Vent was the bankrupt in an action pending in the United States Bankruptcy Court for the Northern District of California. A Relief from the Bankruptcy Stay was granted on November 24, 1986, and the action moved forward in the Common Pleas Court of Allen County.

While the Lima Bargain Center answered the complaint and set forth a cross-claim against Dura-Vent Corporation, Dura-Vent failed to file an answer to the plaintiffs' complaint. On October 22, 1987, the Common Pleas Court of Allen County granted the plaintiffs' Motion for a Default Judgment as against Dura-Vent Corporation. State Farm was awarded judgment in the amount of $52,755.19, and the Kennersons were awarded $1,981.26 plus court costs.

On December 21, 1987, the plaintiffs filed a Supplemental Petition against new party defendants Safeco Insurance Companies ("Safeco") and Cigna Insurance Company pursuant to Ohio R. C. 3929.06. The plaintiffs sought to have these insurers pay the judgments which had been entered against their insured, Dura-vent Corporation.

The new party defendant Safeco filed its answer on January 14, 1988, as did Cigna Insurance Company on or about January 13, 1988. While defendant Safeco admitted the existence of a liability insurance policy that was in effect from June 1, 1980 to June 1, 1982, they denied that the policy was in effect on January 16, 1983, the date of the Kennersons' fire.

Defendant Safeco filed a motion for summary judgment on March 30, 1988, as did Cigna on May 31, 1988. The plaintiffs filed their motion for summary judgment on June 1, 1988. The trial court filed its Judgment Entry granting the

motions for summary judgment of both defendant Safeco and Cigna and overruled the plaintiffs' motion. The plaintiffs now appeal from that decision.

In their two assignments of error, the plaintiffs-appellants contend that the trial court erred in determining that the action was bought under tort theories rather than under a breach of contract theory. The appellants further argue that the provisions of the insurance contract were inaccurately interpreted by the trial court.

Initially we note that it is well-settled in Ohio that in cases involving a contract, the law of the state where the contract was made governs the interpretation of the contract. *Nationwide Mut. Ins. Co.* v. *Ferrin* (1986), 21, Ohio St. 3d 43, 44. The instant insurance contract was entered into by parties doing business in California, and as such, it is clear that California law governs the interpretation of the contract herein.

Appellants, in agreeing that California law is applicable to the policy interpretation, nonetheless contend that the interpretation of California law given by the trial court was erroneous. Appellants assert that this is an action brought under products liability theories and as such, their cause of action may go forward based upon a contractual theory of implied and express warranties. Appellants thus argue that their cause of action arose when the Kennersons bought and took possession of the chimney kit in December of 1981.

Appellants conclude by arguing that the alleged breach of contract occurred at that point in time and thus was within the term of coverage under Safeco's policy of insurance.

We disagree.

We do not believe the theory of recovery under which the appellants may have recovered from the manufacturer for their damages to their personal and real property is the determinative issue here. Rather, the controlling issue in this case is whether there was an "occurrence" under the terms of the manufacturer's insurance policy so as to require the insurance company to reimburse appellants for their damages under any theory of recovery.

In relevant part, the insurance policy provided by Safeco to their insured, Dura-Vent, details under what circumstances coverage is provided:

"COVERAGE B - PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

* * * property damage to which this policy applies, caused by an occurrence * * * ."

An "occurrence" is defined in the insurance policy as:

" * * * an event including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured"

"Property damage" is defined in the insurance policy as:

"(a) physical damage to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom; or, (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss is caused by an occurrence during the policy period."

In previously ruling that California law will govern our interpretation of the insurance policy, we note that it is a well-settled general rule in California that "the meaning of the occurrence of an accident within the meaning of an indemnity policy is not the time that the wrongful act was committed but the time when the complaining party was actually damaged." *Remmer* v. *Glens Falls Indemnity Company* (1956), 140 Cal. App. 2d 84, 88.

Further, California courts have consistently held that the occurrence of an accidents "unambiguously refers to the event causing damage, not the earlier event creating the *potential* for further injury * * * ." *Maples* v. *Aetna Cas. & Surety Co.* (1978), 83 Cal. App. 3d 641, 646-648.

Appellants contend, however, that the exposure to a defective product within the policy period brings a subsequent cause of action within the insurance coverage. Appellants cite *Endo Laboratories, Inc.* v. *Hartford Ins. Group* (1984), 747 F. 2d 1264, as support for this proposition. In *Endo, Supra,* a pregnant woman ingested a drug while the plaintiff was in utero and during the term of the manufacturer's insurance coverage. The child was born with birth defects and the court found as a matter of fact that the injury was inflicted simultaneously with the ingestion of the drug and therefore there was exposure to the defective product, within the policy period.

The *Endo* court, however, recognized and distinguished its own holding from that of *Remmer, supra,* and its progeny. Initially, it was found as a matter of fact by the trial court that the damage to the fetus in *Endo* occurred during the first trimester of pregnancy, and therefore within the policy term. Secondly, the rule followed in *Endo* was clearly limited to those causes of action where the injured party was

160

"justifiably ignorant of their right to sue." *Id.* at 1268-1269 (citing *Tÿsseling* v. *General Accident Fire & Life Assurance Corp., Ltd.* (1976), 55 Cal. app. 3d 623, 628.) Further, the *Tÿsseling* court observed that this rule did not appear to have any application to the interpretation of insurance contracts. *Id.*

We note in passing that in accordance with the California authority cited above, we have previously construed policy language virtually identical to the language in the case before us under Ohio law. See *Clapper* v. *Columbia Mfg. Co.* (July 11, 1989), Hancock App. No. 5-87-41, unreported, holding policy terms defining "occurrence" pertained strictly to the injury resulting from the use of an allegedly defective bicycle and not to the purchase of the bicycle. As in the case before us, coverage in *Clapper, supra,* was denied where the bicycle was purchased during the policy period but the injury did not occur until after the lapse of the policy. *Id.* at 6.

Thus, we conclude that the appellant's claim in this case cannot survive the appellees' motion for summary judgment either under *Remmer, supra, Endo, supra,* or our own holding in *Clapper, supra.* In short, there is no genuine issue of material fact as to whether there was an occurrence under the terms of the insurance policy so as to provide coverage. Where, as here, the fire which caused the appellants' damages occurred six months after the expiration of the manufacturer's liability insurance policy, there is no coverage under the terms of the contract. Accordingly, the first and second assignments of error are not well taken.

For the reasons stated and upon the authorities cited, the judgment of the trial court is affirmed.

*Judgment Affirmed.*

BRYANT and MILLER, JJ., Concur.