[No. B046214. Second Dist., Div. Two. Aug. 28, 1990.]

AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, Plaintiff and Appellant, v.
G. E. LEACH CONSTRUCTION COMPANY et al., Defendants and Respondents.

COUNSEL

Booth, Mitchel & Strange and David R. Flyer for Plaintiff and Appellant.

Marrone, Robinson, Frederick & Foster, J. Allan Frederick, Robert O. Boon, James M. Shields and Laurel J. Vogt for Defendants and Respondents.

OPINION

GATES, J.—Plaintiff American Empire Surplus Lines Insurance Company (American Empire) appeals from the adverse judgment entered in its

declaratory relief action against defendants G. E. Leach Construction Company, Gilbert E. Leach, Helen Leach (referred to collectively as Leach), Continental Insurance Company (Continental), the Harvard Boulevard Law Building, Noeleta Lacey, and others. It seeks to have this court resolve a single issue: "Whether damages caused by Leach are partially covered by the American Empire policy which was in effect when the encroachment was discovered or solely covered by the Continental policy which was in effect at the time the encroachment was constructed."

The determinative facts are uncontroverted. Leach agreed to build a two-story office facility on property owned by the Harvard Boulevard Law Building partnership (Partnership). The construction commenced and was completed in 1980, during which period Leach was insured by Continental. In 1987, at a time when Leach was insured by American Empire, Lacey allegedly discovered that a portion of the foundation of the Partnership's structure encroached upon her property.

Litigation ensued in the modern form of a farrago of actions for damages with cross-complaints for indemnity and affirmative relief. According to the various pleadings, the encroachment purportedly resulted in construction delays, added construction costs and lost income with respect to the development of Lacey's property; physical damage to the encroaching building when Lacey's contractor attempted to remove the encroachment so that he could proceed with Lacey's project; and emotional distress to one of the owners of the encroaching facility. In addition, the legal disputes themselves assertedly precluded the owners of the encroaching structure from refinancing or selling it.

In the face of claims that it was obligated to defend and indemnify defendants in this underlying litigation, American Empire initiated the instant action for declaratory relief to determine its rights and duties under the policy it had issued Leach on April 17, 1986. Although allegedly all the demands of the respective claimants have now been settled by payments made jointly by American Empire and Continental, with the possible exception of the seemingly inevitable "bad faith insurance" suit, the question of reimbursement between the carriers still remains.

Pursuant to the terms of the comprehensive general liability portion of its policy, American Empire agreed to tender "all sums which [Leach] shall become legally obligated to pay as damages because of . . . bodily injury or . . . property damage to which this insurance applies, caused by an occurrence," and to defend any suit against Leach "seeking damages on account

of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . ."

The policy defines an "occurrence" as "an accident, including continuous exposure or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured; . . ." It further defines "bodily injury" as "bodily injury, sickness or disease sustained by any person which *occurs during the policy period,* including death at any time resulting therefrom" and specifies that " 'property damage' means (1) physical injury to or destruction of tangible property which *occurs during the policy period,* including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence during the policy period."* (Italics added.)

█ Relying upon the often cited general rule that "the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged" (*Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84, 88 [295 P.2d 19, 57 A.L.R.2d 1379]), Leach and Continental, the respondents to this appeal, urge the various injuries alleged in the underlying action were suffered during the period Leach was insured by American Empire and were therefore covered by the policy. We disagree.

Where, as here, the underlying claims all flow from the construction of an encroaching building which is, of course, in the nature of a permanent trespass (*Field-Escandon* v. *DeMann* (1988) 204 Cal.App.3d 228, 233 [251 Cal.Rptr. 49]), it is the date the encroachment was created, not the date that it was discovered, which is determinative. (See *Tijsseling* v. *General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623 [127 Cal.Rptr. 681].)

Contrary to respondents' contentions, the rules enunciated in *Remmer* and*Tijsseling* are not truly in conflict. In each instance, the carrier whose policy was in force when the first injury occurred was held liable for all resulting damages, even though the "potential" for that occurrence may have been due to some earlier wrong. In *Remmer* the injury was a landslide and in *Tijsseling* it was the placement of an encroaching building. In *Tijsseling* the wrong and the injury were simultaneous events; in *Remmer* the wrong preceded the injury by several years and, unless and until it occurred, the injury was merely an insurable "potential." As we pointed out many years ago in *Snapp* v. *State Farm Fire & Cas. Co.* (1962) 206 Cal.App.2d 827, 830 [24 Cal.Rptr. 44]: "If sufficient information were available to geological experts, the possibility or probability *all* of earth movements

might be forecast with accuracy. Further, after any movement of land has occurred it might be said to have been 'inevitable' with semantic correctness, but such 'inevitability' does not alter the fact that at the time the contract of insurance was entered into, the event was only a *contingency* or *risk* that might or might not occur within the term of the policy. . . ." (Italics in original.)

Of course, as we also stressed in *Snapp*, the carrier whose policy was in force when the injury first manifested itself, remains liable even though the full measure of damages may not be known or determinable until after the policy period has expired.

"To permit the insurer to terminate its liability while the fortuitous peril which materialized during the term of the policy was still active would not be in accord either with applicable precedents or with the common understanding of the nature and purpose of insurance; . . . [¶] Once the contingent event insured against has occurred during the period covered, the liability of the carrier becomes *contractual* rather than *potential* only, and the sole issue remaining is the extent of its obligation, and it is immaterial that this may not be fully ascertained at the end of the policy period. [Citations.]" (*Snapp* v. *State Farm Fire & Cas. Co., supra,* 206 Cal.App.2d at pp. 831-832. Italics in original.)

Given our conclusion that in the instant case the construction of the encroaching structure and the triggering injury flowing therefrom coincided, thereby invoking Continental's liablilty, it is likewise clear no coverage was afforded Leach under American Empire's "completed operations hazard." That is, we need not decide whether such a provision was intended (1) to extend American Empire's liability to cover even bodily injury or property damage occurring after the end of its policy period if such injury resulted from operations which were themselves performed during its policy period, and/or in addition or in the alternative, (2) to cover all precedent operations, whenever completed, so long as the injury or damage first manifested itself during the policy period. In either event, the American Empire policy would not have been in force at the relevant point in time; consequently, no coverage existed and American Empire had no duty to defend Leach in the underlying action. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].

Our resolution of the basic coverage issues eliminates the need to address the propriety of the trial court's ruling that American Empire waived or is estopped from relying on "exclusion (o)," the so-called "work product" exclusion for "property damage to work performed by or on behalf of the

named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith. . . ."

Similarly, if physical damage done to the encroaching property by Lacey's contractor was inevitable, Continental was liable therefor; if due to some failing on this new contractor's part, obviously neither Leach nor his carrier could be held accountable for that party's misdeeds.

The judgment is reversed, and the matter is remanded to the trial court with instructions to enter a new and different judgment in accordance with the views expressed herein. American Empire is entitled to its costs on appeal.

Roth, P. J., and Klein (B.), J.,* concurred.

A petition for a rehearing was denied September 26, 1990, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied November 28, 1990.

---

* Assigned by the Chairperson of the Judicial Council.