**STAEFA CONTROL–SYSTEM INC., a California Corporation, Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INS. CO. and St. Paul Mercury Ins. Co., Minnesota Corporations, Defendants.**

No. C–93–2224 MHP (ENE).

United States District Court,
N.D. California.

March 18, 1994.

Robert P. Dahlquist, Latham & Watkins, San Diego, CA, Paul A. Dezurick, Suzanne E. Curtis, Graham & James, San Francisco, CA, for plaintiff.

Peter A. Smalbach, Adams Duque & Hazeltine, Cathy L. Croshaw, Luce Forward Hamilton & Scripps, San Francisco, CA, for defendants.

### *OPINION*

PATEL, District Judge.

This diversity action was brought by plaintiff, Staefa Control System, Inc. ("Staefa"), against defendants, St. Paul Fire & Marine Insurance Company and St. Paul Mercury Insurance Company (collectively "St. Paul"), seeking a declaratory judgment that St. Paul has a duty to defend and indemnify Staefa in an underlying tort action. In addition, Staefa alleges that St. Paul's failure to defend Staefa amounts to breach of insurance contract and breach of the implied covenant of good faith and fair dealing, and seeks both actual and punitive damages.

Now before the court are cross-motions for summary judgment. Having considered the parties' arguments and submissions, the court enters the following opinion.

*BACKGROUND*[1]

A. *The Underlying Action*

This action arises out of third party claims brought against Staefa by Hudson I.C.S. ("Hudson") in a tort action filed in this district, *Hudson v. Andrade,* No. C–91–1772 TEH (N.D.Cal. filed June 10, 1991). Hudson brought numerous federal and state causes of action against Staefa and other defendants for damage to real property owned by Hudson adjacent to property owned by Staefa, which Hudson alleges was caused in part by pollution that migrated from Staefa's property. More specifically, Hudson alleges that volatile organic compounds disposed of and released by Staefa and other defendants migrated onto the Hudson property and contaminated soil and groundwater. Hudson also alleges that Staefa is jointly and severally liable with other defendants for all property damage at and clean-up of the Hudson site.

From the 1930s to the late 1970s, the Singer Company ("Singer") manufactured adding machines and cash registers on property adjacent to the Hudson property. In 1976, Singer sold part of its property to Universal Pneumatic Controls, Inc. ("UPC"), which used the property to assemble thermostats, air probes, and other pneumatic controls. In 1978, UPC merged into Staefa, which continued to manufacture pneumatic controls on the site until it closed the facility in 1987.

Staefa discovered the existence of groundwater contamination at its own property in late 1987 or early 1988 as a result of groundwater samples. In February 1988, Staefa notified the California Department of Health and Safety ("DHS"). Staefa subsequently retained a consultant to investigate the contamination. In a report made to DHS on October 3, 1988, the consultant concluded that the former Singer property was likely the source of the contamination, but that no evidence indicated that Staefa itself was responsible for the release of the pollutants.

Hudson filed its first complaint in the underlying action on June 10, 1991, which was superseded by a second amended complaint on March 10, 1992. In that complaint, Hudson alleged causes of action against Staefa and other defendants for declaratory relief and cost of recovery under the Comprehensive Environmental Response, Compensation, & Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.,* and the California Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code §§ 25300 *et seq.,* negligence, negligence per se, continuing trespass, ultrahazardous activity, indemnification, private nuisance, and public nuisance. A litany of cross-claims between defendants ensued.[2]

---

1. Except as otherwise noted, all facts in this section are derived from the joint statement of undisputed facts, factual summaries provided by the parties with their respective motions (where in fact undisputed), as well as the underlying tort complaint.

2. On March 27, 1992, co-defendant Dundee Homeowner's Association, Inc. filed a cross-

The gist of these claims is that Staefa and/or UPC disposed of and released chemicals on the site during operations there, and that Staefa is therefore the cause of the contamination of the Hudson property.

## B. *The Policies*

Between January 1, 1982 and July 16, 1986, Staefa was insured by St. Paul under three comprehensive general liability policies. From January 18, 1982 through January 1, 1983, Staefa was insured under policy # 695 NB 6198 ("Policy #1"); from January 1, 1983 through April 16, 1986, Staefa was insured under policy # 695 NC 3082 ("Policy #2"); from April 16, 1986 through July 16, 1986, Staefa was insured under policy # 695 NF 1374 ("Policy #3").[3]

### 1. *Policy #1*

Policy #1 was in effect from January 18, 1982 through January 1, 1983. This policy's general coverage provision provided that

> Your general liability protection covers you and other persons protected under this agreement against claims for bodily injury or damage to tangible property resulting from an accidental event. Bodily injuries resulting in sickness, disease or death, including damages for care and loss of services, are covered. So is the loss of use of tangible property.

> We'll consider all bodily injury or property damage caused by continuous or repeated exposure to basically the same conditions to have been caused by one accidental event. However, for us to pay a claim, the accidental event must take place while this agreement is in effect and must be some-

thing you didn't expect or intend to happen.

Declaration of Jack Sheely, Ex. A at 1, Policy #1. Policy #1 further provided that "[w]e'll defend any suit brought against you for damages covered under this agreement, even if the suit is groundless or fraudulent." *Id.* at 2.

In a section captioned "Liabilities we won't cover, Total Exclusions," Policy #1 contained the following pollution exclusion and sudden accident exception:

> **Pollution** We won't cover liability claims for injury or damage caused by the continuous or intentional discharge or release of pollutants such as: Smoke. Vapors. Soot. Fumes. Acids. Alkalis. Toxic chemicals, liquids or gases. Or waste materials. But we will cover sudden accidents involving these pollutants.

*Id.* at 3. Finally, Policy #1 contained the following liability broadening provision:

> This section adds protection for you and your business against personal injury liability claims that result from certain offenses committed in the course of your business. Although personal injury is usually thought of as physical injury, it can also mean an invasion of someone's rights. This coverage protects you and other protected persons against claims for damages resulting from the personal injuries described below.

*Id.* at 6. One of the listed injuries, captioned "Wrongful entry," provided that "[y]ou're protected against claims for damages as a result of interference with a person's right to occupy his or her property undisturbed.

---

claim against Staefa with causes of action for equitable implied indemnity, total indemnity, implied contractual indemnity, contribution, negligence, and strict liability. On April 8, 1992, co-defendant City of San Leandro filed a cross-claim naming Staefa as defendant seeking equitable indemnity, contribution, and declaratory relief. On June 4, 1992, co-defendants William Andrade and Helen Senna filed a cross-claim against Staefa seeking equitable indemnity and contribution, and Staefa itself cross-claimed against co-defendants. On August 7, 1992, Citation Homes and associated entities cross-claimed against Staefa, alleging that Staefa spilled, leaked, discharged, disposed of, or otherwise re-

leased hazardous substances into the soil at the Staefa site, and seeking contribution, indemnification and declaratory relief. On August 12, 1992, BART filed a cross-claim against Staefa seeking cost of recovery, and stating causes of action for negligence, negligence per se, private nuisance, public nuisance, trespass, implied equitable indemnity, contribution, and declaratory relief.

3. Policy #3 was originally written to expire on April 16, 1987, but was terminated on July 16, 1986 at Staefa's request. Declaration of Bob Herz, Ex. D, Cancellation Request.

This includes an unjustified eviction or an unjustified entry onto the property." *Id.*

## 2. *Policy # 2*

Policy # 2 was in effect from January 1, 1983 through April 16, 1986. This policy's general coverage provision provided that "[w]e'll pay amounts you or others protected under this agreement are legally required to pay as damages for a covered bodily injury or property damage claim resulting from an accidental event." Sheely Decl. Ex. B at 105, Policy # 2. Policy # 2 further provided that

*Property Damage* means any damage to tangible property of others that happens while this agreement is in effect. This includes loss of use of the damaged property resulting from the damage. Property damage also includes loss of use of others' property that hasn't been physically damaged if caused by an accidental event that happens while this agreement is in effect.

\*    \*    \*    \*    \*    \*

*Accidental event* means any event that results in bodily injury or property damage that the protected person didn't expect or intend to happen.

*Id.* Under a section captioned "Exclusions–Claims We Won't Cover," this policy contained the following pollution exclusion and sudden accident exception:

**Pollution.** We won't cover injury or damage caused by the discharge, dispersal, release or escape of pollutants such as:

\* smoke, vapor, soot or fumes;

\* acids, alkalis, toxic chemicals, liquids or gases, or

\* waste material or other irritants or contaminants.

But this exclusion won't apply to sudden accidents involving pollutants.

This exclusion applies whether or not the claim is based on liability assumed under any contract or agreement.

*Id.* at 108.

Policy # 2 also contained as part of its liability broadening provision the following language:

We'll pay amounts you and others protected under this endorsement are legally re-

quired to pay as damages for covered advertising injury or personal injury claims. These claims are for any of the following types of interference with someone's rights that happen in the course of your business while this endorsement is in effect.

\*    \*    \*    \*    \*    \*

*Personal injury* means any of the following types of interference with someone's rights.

\*    \*    \*    \*    \*    \*

**Wrongful entry or wrongful eviction.** For example, this includes interfering with someone's right to occupy property undisturbed, unjustified eviction or unjustified entry onto the property.

*Id.* at 3. Finally, the liability broadening provision in Policy # 2 provided that "[a]ll other terms of your policy remain the same." *Id.* at 8.

## 3. *Policy # 3*

Policy # 3 was in effect from April 16, 1986 through July 16, 1986. This policy's general coverage provision, identical to that in Policy # 2, provided that "[w]e'll pay amounts you or others protected under this agreement are legally required to pay as damages for a covered bodily injury or property damage claim resulting from an accidental event." Sheely Decl. Ex. C at 65, Policy # 3. As with Policy # 2, Policy # 3 further provided that

*Property Damage* means any damage to tangible property of others that happens while this agreement is in effect. This includes loss of use of the damaged property resulting from the damage. Property damage also includes loss of use of others' property that hasn't been physically damaged if caused by an accidental event that happens while this agreement is in effect.

\*    \*    \*    \*    \*    \*

*Accidental event* means any event that results in bodily injury or property damage that the protected person didn't expect or intend to happen.

*Id.* Under a section captioned "Exclusions–Claims We Won't Cover," Policy # 3 con-

tained a pollution exclusion and sudden accident exception identical to that in Policy # 2:

> **Pollution.** We won't cover injury or damage caused by the discharge, dispersal, release or escape of pollutants such as:
>
> * smoke, vapor, soot or fumes;
>
> * acids, alkalis, toxic chemicals, liquids or gases, or
>
> * waste material or other irritants or contaminants.
>
> But this exclusion won't apply to sudden accidents involving pollutants.
>
> This exclusion applies whether or not the claim is based on liability assumed under any contract or agreement.

*Id.* at 68.

Policy # 3 also contained as part of its liability broadening provision the following language:

> We'll pay amounts you and other protected persons are legally required to pay as damages for covered personal injury or advertising injury claims resulting from your business activities.
>
> *Personal injury* means any of the following acts of interference with a person's rights.
>
> \*      \*      \*      \*      \*      \*
>
> * Wrongful entry, wrongful eviction, or other invasion of the right of private occupancy.

*Id.* at 77.

Finally, the pollution exclusion and sudden accident exception in Policy # 3 was altered by the following "Pollution Exclusion Endorsement:"

> The following replaces the Pollution exclusion. This change excludes coverage.
>
> **Pollution.** We won't cover bodily injury or property damage that results from pollution at or from:
>
> * your premises;
>
> * a waste site; or
>
> * your work site.
>
> Nor will we cover bodily injury or property damage that results from pollution caused by waste pollutants.

> We also won't cover any loss, cost or expense that results from any governmental request or order that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants or waste pollutants.
>
> *Pollution* means the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.
>
> *Pollutants* means any solid, liquid, gaseous or thermal irritant or contaminant, including:
>
> * smoke, vapors, soot, fumes;
>
> * acids, alkalis, chemicals; and
>
> * waste.
>
> *Waste* includes materials to be recycled, reconditioned or reclaimed.
>
> *Your premises* means any premises you own, rent, lease or occupy.
>
> *Waste site* means any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste.
>
> *Your work site* means any site or location on which work is being performed by or for you when:
>
> * pollutants are brought on or to the site in connection with such work; or
>
> * the work is to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

*Id.* at 75. The pollution exclusion concluded with the provision that "[a]ll other terms of your policy remain the same." *Id.*

### C. Defense Tender & Subsequent History

In April 1992, Staefa tendered defense of the *Hudson* complaint and Dundee cross-claim to St. Paul pursuant to Policy # 1 and Policy # 2; Staefa subsequently tendered the remaining cross-claims. By letter dated May 12, 1992, St. Paul reserved its rights and requested further information regarding the claims against Staefa;[4] Staefa provided St. Paul with further information regarding the underlying action by letter dated June 23, 1992, in which Staefa contended that its part in the litigation was only an accident of geog-

---

**4.** Neither party has submitted a copy of this letter to the court.

raphy and due to the fact that the responsible party was in bankruptcy.

By letter dated July 2, 1992, St. Paul requested more information from Staefa, in particular any information that related to the occurrence of any "sudden accident" at the site. Staefa apparently never responded to this request, and by letter dated September 9, 1992, St. Paul declined to defend Staefa against the complaint and the Dundee and City of San Leandro cross-complaints. Staefa subsequently tendered the Andrade, BART and Citation cross-claims by letter dated October 22, 1992, and contended in that letter that there was an "occurrence" within the meaning of the policies because there was an unexpected and unintended migration of hazardous substances during the covered period that resulted in property damage. In January 1993, St. Paul again refused defense of Staefa on the grounds that there had been no evidence of a "sudden accident" within the policy periods. Staefa filed the instant diversity action on June 14, 1993.

*LEGAL STANDARD*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function on summary judgment, however, is not to make credibility determinations, *Anderson,* 477 U.S. at 249,

106 S.Ct. at 2510, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.,* 809 F.2d at 631.

■ Because the scope of coverage under a written insurance policy is solely a matter for judicial interpretation, *Merced Mutual Ins. Co. v. Mendez,* 213 Cal.App.3d 41, 45, 261 Cal.Rptr. 273 (1989), an insurer's duty to defend under a policy is an issue amenable to resolution on summary judgment. *Allstate Ins. Co. v. Tankovich,* 776 F.Supp. 1394, 1396 (N.D.Cal.1991).

*DISCUSSION*

The parties have filed cross-motions for summary judgment, both of which address the same issue—St. Paul's duty to defend Staefa in the underlying action. St. Paul has moved for summary judgment that it has no duty to defend Staefa; Staefa has moved for summary judgment that St. Paul has such a duty. In addition, Staefa has moved for summary judgment that St. Paul's refusal to defend Staefa in the underlying action constitutes breach of the implied covenant of good faith and fair dealing as a matter of law.

I. *Duty to Defend*

A. *Legal Standard*

■ Under California law, an insurer's duty to defend an insured against claims that create a potential for liability is extremely broad, and exists independently of and is much broader than its duty to indemnify. *See Montrose Chemical Corp. v. Superior Court,* 6 Cal. 4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). The duty to defend is measured by the reasonable expectation of the insured, and must be assessed at the outset of litigation against an insured. *See Montrose,* 6 Cal.4th at 295, 24 Cal. Rptr.2d 467, 861 P.2d 1153; *Fire Ins. Exchange v. Jiminez,* 184 Cal.App.3d 437, 441, 229 Cal.Rptr. 83, *rev. denied* (1986).

It is also well established that "if the question concerns the scope of basic coverage ... the burden is on the insured to prove that an event is a claim within the scope of the basic

coverage." *Dyer v. Northbrook Property & Casualty Ins. Co.*, 210 Cal.App.3d 1540, 1547, 259 Cal.Rptr. 298 (1989) (citations omitted). However, "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy," *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (emphasis in original); *accord Montrose*, 6 Cal.4th at 299, 24 Cal. Rptr.2d 467, 861 P.2d 1153, and in "an action based upon a claim that may or may not be covered by the policy ... the insurer is obligated to undertake the defense of the action and to continue such defense at least until it appears that the claim is not covered by the policy. If and when that becomes certain the insurer may turn back the defense." *Firco, Inc. v. Fireman's Fund Ins. Co.*, 173 Cal.App.2d 524, 528, 343 P.2d 311 (1959). Furthermore, "any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993).

Finally, to prevail in an action seeking declaratory relief,

> the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.

*Montrose*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (emphasis in original).

## B. *Discussion*

Both parties have moved for summary judgment on St. Paul's duty to defend. The arguments put forth by the parties in their respective motions are essentially the same, and can be boiled down to three issues. First, do the pollution exclusion clauses in the three policies preclude coverage for the claims alleged in the underlying action? Second, if the policies would otherwise cover the underlying claims, is coverage triggered only if the damage was *discovered* while the policy was in effect, or is coverage triggered if the damage *occurred* while the policy was in effect, regardless of when it was discovered? Finally, is Staefa entitled to defense under the personal injury provisions of the policies?

### 1. *Pollution Exclusions*

All three policies contained provisions excluding certain pollution claims from coverage; the first two had limited exceptions to this exclusion for pollution resulting from a "sudden accident." Under these two policies, St. Paul excluded from coverage all claims for injury or damage caused by the continuous or intentional discharge or release of pollutants. *See* Policy # 1 at 3; Policy # 2 at 108. However, both policies contained a sudden accident exception which provided that the pollution exclusion is inapplicable if the pollution is a result of a sudden accident. Policy # 3 contained a similar pollution exclusion provision and sudden accident exception, *see* Policy # 3 at 68, but further modified those provisions with a pollution exclusion endorsement that provided that St. Paul would not cover *any* claims for bodily injury or property damage resulting from pollution originating at or from Staefa's premises, work site or waste site. *Id.* at 75.

### a. *Interpreting the Sudden Accident Exception*

Before reaching the ultimate issue of whether Staefa qualifies for defense under the sudden accident exception, the court must determine what the term "sudden accident" means under California law. St. Paul contends that a sudden accident provision is unambiguous and has a "temporal connotation," such that a sudden accident is one in which both the release is *unexpected* and it occurs *quickly*, such as an explosion. In response, Staefa argues first that a sudden accident need only be one that is unexpected. In the alternative, Staefa contends that even if "sudden" means quickly, it is not necessary that the damage causing *process* occur quickly (e.g. the migration of pollutants), only that the initial causal *event* occur quickly (e.g. an explosion).

■ Under California law, "[w]ords used in an insurance policy are to be interpreted according to the plain meaning which a lay[person] would ordinarily attach to them." *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640 P.2d 764 (1982). "While a court is prohibited from adopting a strained or absurd interpretation in order to create an ambiguity, if ambiguity or uncertainty does exist, it must be resolved against the insurer." *Consolidated American Ins. Co. v. Mike Soper Marine,* 951 F.2d 186, 188 (9th Cir.1991) (citing *Pisciotta* ). If ambiguity exists, an insurance contract must be interpreted, where possible, "in accordance with its objective of providing indemnity for losses to which the insurance relates," and exclusionary clauses should be narrowly interpreted. *Id.* at 188–89.

Keeping these standards in mind, the court must determine whether, as Staefa contends, the term "sudden accident" requires only that the initial event causing the pollution be sudden, or, as St. Paul contends, that the entire damage causing process must be sudden. Courts across the country have been sharply divided on this issue, and there has been no definitive ruling by the California Supreme Court. In *ACL Technologies, Inc. v. Northbrook Property & Cas. Ins. Co.,* 17 Cal.App.4th 1773, 1779–1783, 22 Cal.Rptr.2d 206 *rev. denied* (1993), one California Appeals court, after exhaustively canvassing all of the courts that have ruled on this issue, concluded that any claims "for possession of the 'majority rule' are at present premature." Having thus conceded an inability to divine a clear cut rule from the precedents, the *ACL* court concluded that "sudden accident" is unambiguous and accordingly must be interpreted as a lay person would understand it. *Id.* at 1785–89; *see also Truck Ins. Exchange v. Pozzuoli,* 17 Cal.App.4th 856, 860, 21 Cal.Rptr.2d 650, *rev. denied* (1993); *Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715, 751–56, 15 Cal.Rptr.2d 815, *rev. denied* (1993). Accordingly, the *ACL* court, noting that "the ordinary person would never think

that something which happens gradually also happens suddenly," held that the word "sudden" in this context must have a temporal connotation, i.e. that a gradual event cannot qualify as a sudden accident. *ACL,* 17 Cal. App.4th at 1786–89, 22 Cal.Rptr.2d 206.[5]

■ Citing *ACL* and *Winterthur,* the Ninth Circuit recently concluded that under California law, "sudden accident" in this context is unambiguous and necessarily connotes a temporal quality. *See Smith v. Hughes Aircraft Co.,* 10 F.3d 1448, 1452–53 (9th Cir. 1993). Following *Smith,* and in keeping with the holdings in *ACL* and *Winterthur,* the court concludes that the "sudden accident" exception applies only to events that occur quickly, such as an explosion. However, this conclusion does not resolve the applicability of the sudden accident exception in the instant case, as Staefa contends that only the initial causal event must be sudden, not the process of contamination itself, such that the exception applies where a sudden event such as an explosion causes the gradual migration of pollution onto neighboring property. In response, St. Paul argues only that migration of pollutants is by definition gradual, such that the sudden accident exception cannot apply.

There is limited case law addressing Staefa's rather creative argument. One California appellate court has concluded that " 'sudden' refers to the pollution's commencement and does not require that the polluting event terminate quickly or have only a brief duration." *Winterthur,* 12 Cal.App.4th at 756, 15 Cal.Rptr.2d 815. However, that court qualified its conclusion by adding that "[i]f a sudden and accidental discharge continues for a long time, at some point it ceases to be sudden or accidental." *Id.* In the absence of controlling case law, this court must attempt to determine how the California Supreme Court would resolve this issue—a job in this instance that must be performed with little precedential guidance. However, keeping in mind the standards for interpreting

---

**5.** One of the original drafters of pollution exclusion clauses like the instant provision stated that the clause, as modified by the exception, was intended to preclude coverage for all but the "sudden, boom-type accident." Williams, *Intent of the Drafters: The Pollution Exclusion and The Insurance Commissioner Documents, in Environmental and Toxic Tort Claims Insurance Coverage in 1990 and Beyond* 26 (1990).

insurance contracts, and the (somewhat qualified) conclusion in *Winterthur*, the court concludes that in *this* context, the temporal requirement of the term "sudden accident" does not preclude liability under the policies because it is simply not clear from the language in the policies whether damages must be caused all at once by a sudden accident to fall within the exception or whether the gradual results of a sudden accident are sufficient.[6]

Accordingly, the court holds that the sudden accident exception applies if there is any possibility that the gradual migration of pollutants from Staefa's property was *caused* by a sudden accident, such as an explosion.

### b. *Applying the Exception*

Regardless of which party bears the burden of proof on the sudden accident exception, the court finds that Staefa is entitled to defense by St. Paul under that exception.[7]

St. Paul contends that Staefa has proffered no evidence that the contamination could have been caused by a sudden accident, and that therefore the pollution exclusion applies and St. Paul has no duty to defend. Staefa counters by arguing first that St. Paul has not negated the possibility that a sudden

6. It is apparent that either interpretation is equally plausible. That is, it makes sense that an insurer precludes coverage for pollution precisely to avoid having to cover damages caused over a long period of time, and that therefore the exception is meant only to cover sudden accidents that result in immediate damages—the Union Carbide Bhopal incident comes to mind. On the other hand, it is equally believable that all the insurer was attempting to protect against was having to cover pollution that resulted from long-term spilling of pollutants or slow leakage from storage facilities, and that the exception applies to contamination which is the consequence of sudden unexpected releases, such as a collapsing tank that leads to migration of pollutants. The term is clearly capable of either interpretation, and is thus ambiguous.

The Ninth Circuit's analysis in *Smith* is of little help in resolving this quandary. In *Smith*, the Ninth Circuit held that the insured could not get around the temporal sudden accident requirement by breaking down its long-term waste disposal practices into discrete temporal components. 10 F.3d at 1453. Such is not the case here, however—Staefa does not contend that long-term disposal or leakage of waste can be considered discrete temporal events, but rather that there were in fact discrete, sudden events that could have caused the pollutants to be released. This contention distinguishes the instant action from *Smith*.

7. The parties dispute which party bears the burden of proving applicability of the pollution exclusion and its sudden accident exception. While both parties agree, and it is well settled under California law, that an insurer bears the burden of proving that an exclusionary clause bars coverage, *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 406, 257 Cal.Rptr. 292, 770 P.2d 704 (1989), they dispute whether that burden requires the insurer to prove the *in*applicability of an exception to an exclusion, or rather whether once the insurer proves applicability of the exclusion the burden shifts back to the insured to prove applicability of the exception.

There is no controlling California law on this issue, and courts in this district and nationwide have disagreed over which party bears the burden of proof on this element. Numerous courts have held that an exception is an element of coverage, such that the *insured* bears the burden of proving applicability of an exception to an exclusion. *See Cooper Dev. Co. v. Employers Ins. of Wausau*, 765 F.Supp. 1429, 1431 (N.D.Cal. 1991) (Conti, J.) (applying California law); *Aeroquip v. Aetna Cas. & Sur. Co.*, No. CV–90–4260 RG, 1991 U.S. Dist. LEXIS 19268 at *10 (C.D.Cal. Oct. 16, 1991) (Gadbois, Jr., J.) (applying California law); *Northern Ins. Co. v. Aardvark Assoc.*, 942 F.2d 189, 195 (3rd Cir.1991) (applying Pennsylvania law); *Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 833 F.Supp. 1239, 1244 (W.D.Mich.1993) (applying Michigan law). However, numerous courts have also resolved the issue in the opposite manner, holding that the burden of proving the non-applicability of an exception is part of proving up the exclusion, such that the burden remains with the *insurer*. *See Hirschberg v. Lumbermens Mut. Cas.*, 798 F.Supp. 600, 603–04 (N.D.Cal.1992) (Walker, J.) (applying California law); *USF & G v. Morrison Grain Co.*, 999 F.2d 489, 493 (10th Cir.1993) (applying Kansas law); *New Castle Cty. v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1181–82 (3rd Cir.1991) (applying Delaware law); *Gould, Inc. v. Continental Cas. Co.*, 822 F.Supp. 1172, 1180–81 (E.D.Pa.1993) (applying Illinois law); *Colonial Tanning Corp. v. Home Indem. Co.*, 780 F.Supp. 906, 919 (N.D.N.Y.1991) (applying New York law).

However, both parties conceded at oral argument that this court need not decide which party bears this burden of proof, as both believe they are entitled to prevail regardless of which party bears the burden. Because the court concludes that even if Staefa has the burden of proof it has met that burden, the court agrees that it is unnecessary to resolve the burden issue and declines to do so.

accident caused the damage, while it has presented evidence sufficient to invoke the sudden accident exception. In the alternative, Staefa contends that even if the sudden accident exception applies, the pollution exclusion itself does not apply because the contaminants may not be pollutants within the definition of the policies.[8]

St. Paul's contention that Staefa has proffered no evidence raising the possibility that the contamination was caused by a sudden event is simply not accurate. First, the *Hudson* complaint itself gives no indication as to what the *Hudson* plaintiffs believe caused the complained of damage; by its terms, the complaint is certainly broad enough to encompass the possibility that a sudden accident caused the damages. Second, and most importantly, Staefa is correct that discovery in the underlying matter is far from complete, and it is therefore possible that evidence will yet turn up revealing that a sudden accident caused the pollution. Furthermore, most of the cases St. Paul has cited to support summary judgment on its duty to defend are cases in which the underlying action is complete and the court is making a post hoc determination as to coverage. *See ACL,* 17 Cal.App.4th 1773, 22 Cal. Rptr.2d 206; *Pozzuoli,* 17 Cal.App.4th 856, 21 Cal.Rptr.2d 650; *Winterthur,* 12 Cal.App. 4th 715, 15 Cal.Rptr.2d 815. In contrast, in the instant action the underlying case is in the early stages of discovery, and whether St. Paul must negate the possibility that a sudden accident caused the contamination or Staefa must raise that possibility, it is simply premature for this court to conclude that no such event was a possible cause of the damages. *See Montrose,* 6 Cal.4th at 304–05, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (holding where existing evidence in the record is un-

clear on possibility of occurrence during the policy period, it is premature in a duty to defend action to grant insurer summary judgment). This conclusion is bolstered by the declaration of Earl James, Staefa's putative expert geologist, who stated that it is his current opinion that at least some of the pollution may have been caused by the collapse of an underground storage tank on the property in 1982. James Decl. at ¶ 8.[9]

While the evidence in the record at this point is by no means unequivocal, it certainly raises the *possibility* that the damages alleged in the underlying action were caused by a sudden accident, and St. Paul has failed to submit *any* extrinsic evidence precluding that possibility. Under the broad duty to defend language of *Montrose,* Staefa is clearly entitled to defense under the sudden accident exceptions in Policies # 1 & # 2, presuming the other requirements for coverage discussed in section 2 below are satisfied.

### c. *Policy # 3—the Absolute Pollution Exclusion*

Having ruled that Staefa is entitled to defense under the sudden accident exception to the pollution exclusions in Policies # 1 & # 2, the court must determine whether Staefa is entitled to defense under Policy # 3, which has an absolute pollution exclusion unmodified by a sudden accident exception.

St. Paul asserts that the absolute pollution exclusion unambiguously precludes coverage for any claims arising from environmental contamination. In response, Staefa argues first that the pollution exclusion does not exclude coverage for liability resulting from pollution emanating at or from third party sites and that because the *Hudson* plaintiffs and co-defendants are alleging that Staefa is jointly and severally liable for all damage to

---

8. St. Paul also contends that Policy # 3 clearly bars coverage, as it contains an absolute pollution exclusion not modified by the sudden accident exception. Staefa contends that the absolute pollution exclusion in Policy # 3 does not preclude coverage for pollutants emanating from third party work sites or coverage for liability for personal injury damages caused by pollutants, such as trespass or nuisance. The court will address this issue following discussion of the sudden accident exception in Policies # 1 and # 2.

9. Mr. James' evidence regarding explosions on the property in 1951 and 1962 does not, however, bolster Staefa's position. Such explosions, even if proven to be the source of the pollution, occurred decades before St. Paul's insurance policies covered Staefa, and thus even if the pollution continued to migrate during the course of the policies, as Mr. James says they might have, the initial causal event—the sudden accident – did not occur within the coverage period of the policies.

the Hudson property, Staefa could be found liable for such third party pollution. Second, Staefa contends that this exclusion precludes coverage only for bodily injury and property damage, not pollution-related liabilities based upon personal injury, such as the nuisance and trespass claims alleged in *Hudson*. Finally, Staefa contends that this exclusion is inapplicable because Staefa may be held liable in *Hudson* for the clean-up of substances which are not pollutants as defined in the exclusion, such as petroleum products.

The absolute pollution exclusion in Policy #3 contains broad language that precludes coverage for damages caused by work performed by or for Staefa or at its work site. Staefa's first argument, that this exclusion doesn't preclude coverage for potential liability from third party work sites, relies solely on the argument that Staefa could be held liable for third party pollution based on the joint and several liability allegation in the *Hudson* action. Staefa cites no case law to support this proposition, and its attempt to circumvent the pollution exclusion via the back door fails. An allegation of joint and several liability relates to the apportionment of damages once a party has been found liable; it does not raise the potential for liability in the first instance absent specific allegations of liability against a party. That is, unless Staefa could itself be held liable for pollution from its own site, which it cannot under Policy #3, there is no way the joint and several liability allegation could hold them responsible for pollutants from third party work sites. Staefa's first argument is thus without merit.

■ Staefa's second argument rests on the fact that the pollution exclusion precludes coverage only for allegations of bodily injury and property damage. Staefa contends that the allegations of trespass and nuisance in the *Hudson* action qualify as neither bodily injury nor property damage, such that the pollution exclusion does not bar coverage.

Applying the standards of insurance contract interpretation articulated above, it is clear that Staefa's second argument has merit. The term "property damage" is fairly broad, and capable of conflicting interpretations. While the exclusion could be read as

St. Paul argues to preclude coverage for allegations of *any* damage to property or its use, it is equally plausible to read the exclusion to preclude coverage only for property damage claims that directly affect the right to possess the property, as opposed to claims such as the instant ones for trespass and nuisance, which also implicate the right to use and enjoy the property. Because exclusions in insurance policies must be read narrowly and, where ambiguous, in favor of coverage for the insured, the court finds that the absolute pollution exclusion does not bar coverage for Staefa under Policy #3 for the trespass and nuisance claims in *Hudson*.

■ Staefa finally argues that it is possible that the substances which caused the damage alleged in *Hudson* are not pollutants as defined by Policy #3, such that the absolute exclusion does not apply. Specifically, Staefa contends that some of the damage to the Hudson property may have been caused by petroleum products, which Staefa argues do not qualify as pollutants.

While there is no controlling case law on this point, the court finds that Staefa's argument lacks merit. Policy #3 defines pollutant to include "any solid, liquid, gaseous or thermal irritant or contaminant...." Policy #2 at 75. Staefa's contention that petroleum is not a pollutant within this definition is belied both by science and common sense. Petroleum, either as a liquid or a gas, has been found to be an environmental contaminant or irritant by both courts and legislatures. *See, e.g. Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121–23 (2d Cir.1990) (holding absolute pollution exclusion nearly identical to instant exclusion precludes coverage for release of fuel oil); *Tug Ocean Prince, Inc. v. U.S.*, 584 F.2d 1151, 1161–62 (2d Cir.1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979) (noting that oil pollution has long been a concern in this country, and tracing history of congressional legislation in this area); *see also* 33 U.S.C. § 1321 (the federal Clean Water Act) (prohibiting discharge of petroleum into waterways); 40 C.F.R. § 110 *et seq.* (the federal regulations relating to "oil pollution" promulgated pursuant to the Clean Water Act). There being no genuine ambiguity

in the definition of pollutant in the exclusion, the court finds that petroleum is a pollutant within the meaning of Policy # 3.[10] Accordingly, Staefa's contention that the absolute pollution exclusion in Policy # 3 is inapplicable because there may have been petroleum contamination of the Hudson property fails.

## 2. Trigger

■ Having concluded that none of the pollution exclusions precludes Staefa's entitlement to defense in *Hudson* under the three policies, the court must next determine whether there was an "occurrence" within the time period covered by the policies. St. Paul contends that coverage is only triggered if the damage alleged in *Hudson* was *discovered* while the policy was in effect, while Staefa argues that coverage is triggered if the damage *occurred* while the policy was in effect, regardless of when it was discovered.

The relevant provisions of all three policies are almost identical. Policy # 1 provides coverage, inter alia, for property damage that results from "an accidental event" that "take[s] place while this agreement is in effect...." Policy # 1 at 1. Policies # 2 & # 3 have identical language, providing coverage, inter alia, for "property damage claim[s] resulting from an accidental event" where property damage "means any damage to tangible property that happens while this agreement is in effect." Policy # 2 at 105; Policy # 3 at 65.

Once again, the case law on this point is in conflict, and there has been no definitive ruling by the California Supreme Court. In support of its position, St. Paul cites several cases in which it contends courts applying California have adopted the so-called "manifestation trigger" for determining when an occurrence takes place. *See Pines of La Jolla Homeowners Assn. v. Industrial Indem.*, 5 Cal.App.4th 714, 721–22, 7 Cal.

Rptr.2d 53 (1992); *Chemstar Inc. v. Liberty Mut. Ins. Co.*, 797 F.Supp. 1541, 1550–51 (C.D.Cal.1992) (Hupp, J.); *Truck Ins. Exchange v. Pozzuoli*, 17 Cal.App.4th 856, 21 Cal.Rptr.2d 650, *rev. denied* (1993); *County Sanitation Dist. v. Harbor Ins. Co.*, 17 Cal. App.4th 1622, 1629–33, 22 Cal.Rptr.2d 90, *reh'g granted* (1993).

However, each of the cases cited by St. Paul in support of a manifestation trigger can be distinguished from the instant action. *Pines of La Jolla* is inapposite because it involved a dispute between two insurers, and thus the standards of contract interpretation that must be applied in the instant action were not employed. *Pozzuoli* does not discuss the trigger issue at all. In *Chemstar*, Judge Hupp held that a manifestation trigger is proper in circumstances where no damage actually occurs until the problem manifests—in that case, disfiguring of plaster—and carefully distinguished that situation from "toxic property damage cases" like the instant case "where damage allegedly occurred upon first exposure to the [pollutants]" but did not manifest until some time later. 797 F.Supp. at 1551. The court's analysis in *Harbor Insurance* is similar—i.e., the relevant inquiry is not solely a determination of when the causal event occurred, but rather when the injured party was damaged. In *Harbor Insurance*, as in *Chemstar*, the causal event (a progressive landslide) did not in and of itself damage the injured parties; rather, as the court held, the damage only occurred upon manifestation—once cracks developed in the houses as a result of the slide. 17 Cal.App.4th at 1629–33, 22 Cal. Rptr.2d 90. Those circumstances are quite distinct from the instant action, where the damage to the Hudson property occurred immediately upon the pollutants entering the property, which may well have been long before anyone discovered the problem. This

---

10. The one reported case cited by Staefa does not hold to the contrary. *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 768 F.Supp. 1463 (D.Kan.1991), *aff'd* 987 F.2d 1516 (10th Cir. 1993), merely holds that the term "pollutant" should not be read so broadly as to include every discharge of a chemical, whether or not it causes environmental degradation and contamination. *Id.* at 1471. Instead, that court held, "pollutant" must be read to include only those chemicals

that are toxic or particularly harmful and have been recognized as such by industry or governmental regulators. *Id.* at 1470. Petroleum certainly falls within such a definition. The court respectfully disagrees with the conclusion to the contrary reached by the court in *Breshears v. Federated Mut. Ins. Co.*, No. CV-F-91-6 REC, 1991 WL 274233, 1991 U.S. Dist. LEXIS 18872 (E.D.Cal.1991) (Coyle, J.) (holding that petroleum is not a pollutant).

crucial distinction finds support in several recent cases applying California law. *See TBG, Inc. v. Commercial Union Ins. Co.*, 806 F.Supp. 1444, 1453 (N.D.Cal.1990) (Smith, J.) (adopting an "exposure trigger" in a chemical contamination case because "[e]ach time such a release occurred, the property was immediately damaged"); *Garriott Crop Dusting Co. v. Superior Court*, 221 Cal.App.3d 783, 794, 270 Cal.Rptr. 678, *rev. denied* (1990) (discussing distinction "between a wrongful act (not an occurrence) and the injurious result of that act (an occurrence)"); *American Empire Surplus Lines Ins. Co. v. G.E. Leach Const. Co.*, 223 Cal.App.3d 226, 229, 272 Cal. Rptr. 704, *rev. denied* (1990) (distinguishing cases where event and damage were simultaneous from those where damage occurred only upon manifestation at later date).[11]

Under California law, there is no single trigger theory appropriate for application in all property damage actions. *See TBG, Inc.*, 806 F.Supp. at 1452. Rather, applying the standards for insurance contract interpretation articulated above, the court must look to the language of the policies and the nature of the damage alleged in the underlying action to determine the proper "trigger." The relevant policy language is somewhat ambiguous. While it is clear that Staefa was covered for accidental events that cause damage, it is not readily apparent whether just the accidental event must occur during the policy period or whether the damage itself must also occur during that time. Given the ambiguity, this court must read the policies in favor of coverage. However, even were this not the case, there is nothing in any of the policies to indicate that damage must be *discovered* during the lifetime of the policies for them to apply. Thus, the court concludes that the proper triggering "occurrence" under the policies is not the discovery of the damage, but rather the date the *Hudson* plaintiffs were allegedly injured. *Accord TBG, Inc.*, 806 F.Supp. at 1453.[12] If there is any possibility that the pollutants migrated onto the Hudson property during the time the St. Paul policies were in effect, Staefa is entitled to defense.

■■■ There is no conclusive evidence in the record establishing the date the pollutants allegedly migrated onto the Hudson property.[13] Because it is possible that the migration occurred during the time St. Paul's policies were in effect, St. Paul has failed to satisfy its burden of proof. Accordingly, the court finds that St. Paul must defend Staefa in the underlying action.

### 3. *Personal Injury Provisions*

■■■ Staefa's final argument is that it is entitled to defense in the *Hudson* action based on the personal injury provisions of the policies. While it is unnecessary to decide this issue given the conclusions reached above, the court nonetheless will address this contention in the interest of a full and final resolution of this motion.

Staefa contends that it is entitled to defense under the personal injury provisions of the policies. With minor variations in language, those provisions provide, in relevant part, that St. Paul will defend Staefa from liability for damages resulting from personal injury claims, with personal injury defined to include "wrongful entry, wrongful eviction, or

---

11. The *Harbor Insurance* court's concluding language also supports this reading: "... the time of the relevant 'occurrence' ... is not when the wrongful act was committed but when the complaining party was actually damaged." 17 Cal. App.4th at 1633, 22 Cal.Rptr.2d 90 (citation omitted).

Furthermore, two recent California appellate cases rejected the manifestation trigger, though neither have precedential value because they have been accepted for review by the California Supreme Court. *See Montrose Chemical Corp. v. Admiral Ins. Co.*, 20 Cal.App. 4th 678, 5 Cal. Rptr.2d 358 (1992), *rev. granted* 24 Cal.Rptr.2d 661, 862 P.2d 661 (1992); and *Stonewall Ins. Co. v. City of Palos Verdes Estates*, 18 Cal.App.4th

1234, 9 Cal.Rptr.2d 663 (1992), *rev. granted*, 11 Cal.Rptr.2d 329, 834 P.2d 1147 (1992).

12. The court respectfully disagrees with the court's adoption of the manifestation trigger in *Houston General Ins. Co. v. AG Prod. Co. & Chemurgic Ag. Chemicals, Inc.*, 840 F.Supp. 738, 740–42 (E.D.Cal.1993) (Coyle, J.).

13. It *is* clear that pollution at the Staefa site was *discovered* in late 1987 or early 1988. However, nothing submitted to the court indicates that any conclusion has been reached as to when the event or events that caused the pollution occurred or when the pollution actually migrated onto the Hudson property.

other invasion of the right of private occupancy." Policy #1 at 6; Policy #2 at 3; Policy #3 at 77. Staefa argues that the allegations of trespass and nuisance in *Hudson* trigger St. Paul's duty to defend under the "other invasion of the right of private occupancy" clause.

St. Paul makes four arguments in response. St. Paul first contends that property damage is by definition not personal injury, such that any duty to defend in *Hudson* would have to arise under the property damage provisions, not the personal injury provisions. Second, St. Paul argues that under California law personal injury coverage is limited to specified offenses enumerated in the policy, and that because the policies did not specify trespass and nuisance, they are not covered. Third, St. Paul argues that a distinction must be drawn between a mere *physical invasion* of property, which it argues is the allegation in *Hudson*, and invasion of a person's *right to possess* real property, which it contends is the claim its policies cover. Finally, St. Paul argues that in all three policies the property damage exclusions are incorporated into the personal injury provisions. Because St. Paul's third argument is dispositive, the court declines to address the remaining three.

St. Paul's third argument is that its policies provide coverage only for interference with the right to possess property, not the "mere" physical invasion of that property. In response, Staefa has directed the attention of the court to several cases from other jurisdictions that have held language similar to that at issue here to be ambiguous, and thus found that property damage can be covered by personal injury provisions because trespass and nuisance can be characterized as an "other invasion of the right of private occupancy." *See Hirschberg*, 798 F.Supp. at 604–05 (holding that claims of nuisance and trespass based on pollution can be covered by personal injury provisions); *Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1040–42 (7th Cir.1992), *reh'g en banc denied* (1993) (holding that the phrase "other invasion of the right to private occupancy" covers physical invasions and does not require an interference with the right to possess the property); *Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265, 273 (1st Cir. 1990) (holding that allegations of trespass and nuisance are covered by personal injury provisions identical to the instant provisions).

However, in a well-reasoned opinion released just last month, a California appellate court ruled that language identical to that in the St. Paul policies was unambiguous, and therefore held that property damage claims of the sort alleged in *Hudson* were not covered by personal injury provisions. *See Titan Corp. v. Aetna Cas. & Sur. Co.*, 22 Cal. App.4th 457, 27 Cal.Rptr.2d 476, 486 (1994). By precluding an insured from recovering under the personal injury provision what is expressly excluded under the property damage provision, this holding is consistent with the general rule of contract interpretation that a contract must be interpreted as a whole, with each clause giving meaning to the others. *See Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 916, 718 P.2d 920 (1986). Furthermore, this holding is consistent with the principle of insurance contract interpretation that an insured is entitled to coverage only if it has an objectively reasonable expectation of coverage. *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). As the court in *Titan Corp.* held, it is simply not objectively reasonable for an insured to expect that pollution damage specifically excluded from coverage by its property damage provision would be covered under its personal injury provision. 27 Cal. Rptr.2d at 487.

Following the holding and reasoning in *Titan Corp.*, this court concludes that the language in the personal injury provisions is unambiguous, and that Staefa is not entitled to defense for claims of property damage under those provisions.

## II. *Breach of Covenant of Good Faith*

██ Having found that St. Paul has a duty to defend Staefa in the *Hudson* action, the court must now turn to Staefa's motion for summary judgment that St. Paul's failure to defend constitutes a breach of the cove-

nant of good faith and fair dealing as a matter of law.

 Under California law, a covenant of good faith and fair dealing is implied in every contract, and an insured may maintain an action in tort against its insurer for breach of that covenant. *See Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 768, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984). This cause of action has two requirements: (1) benefits due under the policy must have been withheld, and (2) the reason for withholding benefits must have been unreasonable, in bad faith, or without proper cause. *See Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151, 271 Cal. Rptr. 246 *rev. denied* (1990).

The first requirement has clearly been satisfied—as explained in great detail above, St. Paul had a duty to defend Staefa in the *Hudson* action and has refused to do so. However, Staefa has not met its burden of showing that St. Paul's refusal to defend Staefa was in bad faith. Staefa's only "evidence" of bad faith is that in refusing the defense, St. Paul "chose to ignore the express allegations being made in the *Hudson* action and three decades of California insurance law." Staefa's Mem. of P. & A. in Supp. of S.J., at 12. In addition, Staefa points to St. Paul's second refusal to defend despite Staefa's request to reconsider following the California Supreme Court's decision in *Montrose, supra. Id.* at 13.

■ These allegations are insufficient to warrant summary judgment against St. Paul on the breach of the covenant of good faith issue. While this court has ultimately concluded that St. Paul owes a duty to defend Staefa in *Hudson*, it should be clear from the lengthy and intricate discussion required to reach that result that, at the very least, the applicable California insurance law is conflicted. A court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability. *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir.1988). While this court is inclined to believe that insurers should, as a general matter, defend their insureds under a reservation of rights if there is any doubt as to the propriety of defense, such inclination does not substitute for evidence of unreasonableness or bad faith on the part of St. Paul. Accordingly, there being a genuine factual dispute as to whether St. Paul's refusal to defend Staefa constitutes breach of the implied covenant of good faith and fair dealing, Staefa's motion for summary judgment on this claim must be denied.

## CONCLUSION

For the foregoing reasons, Staefa's motion for summary judgment that St. Paul has a duty to defend Staefa in the *Hudson* action is hereby GRANTED; St. Paul's cross-motion for summary judgment that it has no duty to defend Staefa is hereby DENIED; and Staefa's motion for summary judgment that St. Paul breached the implied covenant of good faith and fair dealing is hereby DENIED.

IT IS SO ORDERED.