[No. D016099. Fourth Dist., Div. One. Aug. 3, 1993.]

TRUCK INSURANCE EXCHANGE, Plaintiff and Respondent, v.
PETER POZZUOLI et al., Defendants and Appellants.

## COUNSEL

Whitesell, Ralls & Stroh and Herbert A. Stroh for Defendants and Appellants.

Chapin, Fleming & Winet, Peter C. Ward and Vonnie L. Hansen for Plaintiff and Respondent.

## OPINION

**NARES, J.**—Peter and Adelia Pozzuoli (Insureds) appeal from a judgment in favor of Truck Insurance Exchange (Insurer). Insureds claim language in a "pollution exclusion" clause is ambiguous, and should be construed in

favor of Insureds.[1] The trial court found the language unambiguous, and granted summary judgment in favor of Insurer. We affirm.

## BACKGROUND

In December 1985, the Insureds purchased the Parkway Car Wash in Escondido, a facility that also sold gasoline. The car wash included three underground gasoline storage tanks which were connected to the gasoline pumps. Insureds purchased a comprehensive liability policy for the business which was issued by Insurer.

The policy issued to Insureds by Insurer provided for liability coverage and defense of lawsuits arising from an "occurrence" or "an event, or series of events, including injurious exposure to conditions, proximately caused by an act or omission of the insured" resulting in damages which are "neither expected nor intended" by Insureds.

The policy contained a standard "pollution exclusion" clause limiting coverage. The clause excluded coverage for property damage "arising out of the discharge, dispersal, release or escape of . . . liquids or . . . waste materials or other . . . contaminants . . . into or upon the land, . . . but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

The policy further defined "accidental" as "neither expected nor intended by the insured," and defined "sudden" as "not continuous or repeated in nature."

The "occurrence" here is long-term leakage of gasoline from one underground storage tank on the property purchased by Insureds in December 1985. Insureds did not discover the leakage until September 1986. While the leakage may have been going on since before Insureds purchased the property, it was stipulated below that the leakage had been going on for at least 60 days.

The trial court determined the word "sudden" was not ambiguous, that it had a temporal meaning, and that a leak of at least 60 days' duration was "clearly not sudden, under a reasonable interpretation of that term."

---

[1]This question has been frequently litigated in appellate courts across the country, and there are numerous cases on both sides of the issue. (See, e.g., the authorities reviewed in *Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 751-756 [15 Cal.Rptr.2d 815].) Insureds in particular cite to numerous federal district court cases "purporting to apply state law." (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 820 [274 Cal.Rptr. 820, 799 P.2d 1253].) We need not further refer to these cases, however, as we find California authority, particularly *Shell Oil*, adequate to resolve the issue before us.

Having determined that the exception to the pollution exclusion clause did not apply to the leakage in this case, the court entered summary judgment for Insurer.

## STANDARD OF REVIEW

The appeal presents for review a decision of the trial court on a pure question of law, the interpretation of the language in an insurance policy. We thus determine the question de novo, under a nondeferential standard.

## DISCUSSION

The California Supreme Court has provided guidance for construing insurance policy language in *AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at pages 821-822: "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.,* § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.,* § 1644), controls judicial interpretation. (*Id.,* § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning."

Here, of course, the parties clearly intended, as the policy language unambiguously states, that "discharge, dispersal, release or escape of . . . liquids or . . . waste materials or other . . . contaminants . . . into or upon the land" would be *excluded* from coverage. The exception to this exclusion is a case where the discharge is "sudden and accidental." In other words, precisely the situation here involved, a leakage of extended duration, must be deemed to have been intentionally excluded from coverage by the parties.[2]

The principles set forth in *AIU* have been followed in the recent case of *Shell Oil Co.* v. *Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th 715. That case, involving coverage for pollution extending for over 30 years at the Rocky Mountain Arsenal in Colorado, also involved policy language setting forth a "pollution exclusion." Some of the policies at issue "stated that the

---

[2]As to Insurer this is clearly correct, as the principal draftsman of the pollution exclusion clause has stated it was intended to wholly eliminate coverage for pollution except in the case of a "classical accident," which he defined as a "sudden, boom-type accident" such as an explosion. (Williams, *Intent of the Drafters: The Pollution Exclusion And The Insurance Commissioner Documents* in Environmental and Toxic Tort Claims Insurance Coverage in 1990 and Beyond (1990) pp. 25-26. [Author is the editor.])

'exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental.*' (Italics added.)" (*Id.* at p. 753.)

There, the insureds argued, as here, "that 'sudden' is ambiguous and that we should construe it to cover unexpected or unintended events *without any temporal limitation.*" (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at p. 752, italics added.) The court rejected that assertion, and held instead that "in the phrase, 'sudden and accidental,' 'accidental' conveys the sense of an unexpected and unintended event, while 'sudden' conveys the sense of an unexpected event that is abrupt or immediate in nature. 'Sudden and accidental' is not ambiguous if we give the words their full significance. A court should not make a phrase ambiguous by unreasonably truncating a word's meaning."[3] (*Id.* at p. 755.)

Just as the *Shell Oil* court refused to create ambiguity in the phrase "sudden and accidental," there is no need for us to create ambiguity by "unreasonably truncating" the meaning of the single word "sudden." This is particularly true here, as distinguished from the other cases discussed in which the policy itself does not define the term used. In this case, we need not go outside the policy language, for the policy itself *does* define "sudden" as "not continuous." Any continuous event, whether it be of 30 years' or 2 months' duration, is simply not "sudden."

In this case, Insureds purchased an insurance policy with language expressly *precluding* coverage for pollution which was *continuous* rather than sudden. There is no issue as to the continuous nature of the pollution here. ▉ "[A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy." (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

▉ Here, Insurer clearly intended to exclude all coverage for pollution except in the case of a "sudden" accident. If the underground storage tank had exploded (the "classical accident" envisaged by the drafter) causing pollution damage to surrounding property, the Insureds' expectation of coverage would be "objectively reasonable."

---

[3]Insureds point to language in *Shell Oil* opining that "a sudden and accidental discharge of a dangerous pollutant could continue unabated for some period because of a negligent failure to discover it, technical problems or a lack of resources that delay curtailment, or some other circumstance. Liability from such an event could well be covered." (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at p. 756.) This observation is dicta, rather than a holding, and in any event has no application to the facts of the matter before us.

In this case, however, the pollution process was both continuous and long-term, and thus Insureds could not have reasonably expected coverage for an event which was *expressly* excluded therefrom. The trial court's conclusion that the word "sudden" has a temporal meaning was correct, as it coincides with "the meaning a layperson would ascribe" to the contract language in this case.

### DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

Kremer, P. J., and Froehlich, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 17, 1993.