[No. D034190. Fourth Dist., Div. One. July 11, 2000.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT CAMPBELL, Defendant and Respondent.

## COUNSEL

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Anthony Lovett, Deputy District Attorneys, for Plaintiff and Appellant.

Anna M. Jauregui, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**BENKE, Acting P. J.**—Does covering the eyes of the victim of a sexual assault with tape so as to prevent sight constitute "tying or binding" of the victim? Seeking an answer to this question, the People appeal from a superior court order granting a Penal Code[1] section 995 motion to set aside an allegation under section 667.61, subdivisions (a), (c) and (e)(2), (6) that Robert Campbell did, in the course of committing sodomy by force in violation of section 286, tie or bind his victim.

The magistrate at the preliminary hearing found that binding the victim's head herein did not come within the statute, and the superior court later granted Campbell's motion to set aside the repleaded allegation. Campbell here asserts that the challenged determination was a factual one, which is not now subject to our redetermination, and in any event, the phrase "tying or binding" is unconstitutionally vague. Finding the undisputed evidence of Campbell's conduct comes within the statutory prohibitions, and the rulings below were thus erroneous, we reverse.

[1]All statutory references are to the Penal Code.

FACTS[2]

K.M. had known Campbell for some months before August 21, 1998, and had also seen him on that day, which was her 64th birthday. In the afternoon, K.M. went out to work in the yard of her Oceanside home, leaving her door unlocked. When she went back into her house, K.M. (a diabetic) poured herself a glass of milk, and then went to her bedroom to get insulin.

As K.M. passed her main bathroom, Campbell attacked her from behind, pulling a towel over her head and putting his hand over her mouth. When K.M. said she had to breathe, Campbell answered that he could not let her see who he was, and asked if she had any tape in the house. She said she had tape in a basket in the kitchen.

Campbell held K.M. so close to his body that she could feel his erect penis against her back, walked her to the kitchen, and selected masking tape with which to bind her head. Campbell wound the tape tightly around K.M's head, continuing below her eyes about halfway down her nose. Thereafter, K.M. could not see, but had to feel her way around her house as Campbell took her back to her bedroom and pushed her to the floor.

When K.M. pleaded with Campbell not to hurt her, he said he only wanted her money. At one point later, after Campbell had pulled a pillowcase over her head, K.M. thought she was alone. She then felt her way to a party wall, banged on it three times to alert a neighbor, and returned and sat down on the bed. Able to see "a little bit," K.M. noted her checkbook and other items on the bed, and threw the checkbook underneath the bed.

Campbell returned and stood K.M. up. She had been asking him if she could have her milk and insulin in the dining room, and Campbell took her down the hall. As they passed a guestroom, however, Campbell pushed K.M. inside to the floor and then kneed her in the back, knocking the breath out of her. Then Campbell said, "I will do this and then I'll leave."

Understanding (because of his earlier erection) Campbell was referring to a sexual assault, K.M. said she had had a major operation and was (referring to her vagina) "closed up" and could not have sex. She then showed Campbell a scar running from below her breast down to her stomach.

Campbell immediately turned K.M.'s body over, pulled down her shorts and underpants, and pushed his penis against her anus, despite her protestations that she was closed up there as well. Campbell then masturbated and

---

[2]We abbreviate our recitation of the largely uncontested evidence received at the preliminary hearing.

ejaculated. He then stood K.M. up, and she pulled her clothes back up. Campbell put her in a closet and told her to stay there. K.M. later was able to see out the bottom of the masking tape well enough to escape from the closet and go to her neighbor. The tightly wound tape upon K.M.'s head had to be cut in order to remove it.

Medical examination of K.M. revealed tearing and injury to the anus consistent with forcible sodomy. Bruising was noted on her face some days after the assault.

## PROCEDURE

By complaint filed September 18, 1998, the People charged Campbell with five counts arising out of his residential robbery and forcible sodomy of K.M. Count 1 of the complaint charged rape by a foreign object in violation of section 289, subdivision (a), and it was also alleged that Campbell had tied or bound his victim within the meaning of section 667.61, subdivisions (a), (c), and (e)(6).

At the conclusion of the preliminary hearing, the magistrate found the evidence did not support the charged rape by a foreign object, but did support a charge of sodomy by force in violation of section 286. The magistrate further found the evidence did not support the tying or binding allegation.

By an information filed April 9, 1999, Campbell was charged with the offenses in the original complaint and a new count 6, sodomy by force with a tying or binding allegation.

On July 2, 1999, the superior court granted Campbell's section 995 motion in part, ordering the tying or binding allegation set aside. The People petitioned for mandate, which we denied. Campbell was later convicted of sodomy by force, residential robbery and burglary, assault with intent to commit rape and false imprisonment; three-strike priors and other enhancements were found true, and Campbell was thereafter sentenced. The People appeal, pursuant to section 1238, subdivision (a)(1),[3] from the order granting in part Campbell's section 995 motion.

## STANDARD OF REVIEW

"In an appeal from an order of the superior court granting a Penal Code section 995 motion, we disregard the ruling of the superior court and directly

---

[3]"An appeal may be taken by the people from . . . [¶] [a]n order setting aside all or any portion of the . . . information. (§ 1238, subd. (a)(1).)"

review the determination of the magistrate . . . . [Citation.]" *(People v. Alonzo* (1993) 13 Cal.App.4th 535, 538 [16 Cal.Rptr.2d 656].)

## DISCUSSION

 The People argue that binding the victim's head with tape so that she could not see came within the statutory prohibition on the tying or binding of the victim during the commission of the offense. Campbell argues first that the statute should not be so read, and in the alternative, should we read the statute so as to include his conduct, the statute is unconstitutionally vague. We address these matters in turn.

### I. *The Statute*

Section 667.61 requires the trial court to impose a life sentence when the defendant is convicted of a specified sexual offense and the People plead and prove one or more specified aggravating circumstances. (See § 667.61, subds. (a)-(e); *People v. Jones* (1997) 58 Cal.App.4th 693, 719-720 [68 Cal.Rptr.2d 506].) When the evidence demonstrates either one of the circumstances listed under section 667.61, subdivision (d) or at least two of the circumstances listed under subdivision (e), the term is 25 years to life; when only one circumstance under subdivision (e) is demonstrated, the term is 15 years to life. (§ 667.61, subds. (a), (b).) Subdivision (e)(6) defines one such circumstance as "engag[ing] in the tying or binding of the victim . . . in the commission of the . . . offense." Our research has disclosed no case construing this portion of the statute.[4]

In granting Campbell's motion to set aside the tying or binding allegation, the superior court judge referred to the magistrate's determination that the victim's freedom of movement had not been impeded as something which "could be considered a factual finding."[5] Campbell now argues the magistrate's finding the statute inapplicable was indeed a factual ruling, not now subject to redetermination. We cannot agree.

It is wholly undisputed that Campbell bound his victim's head with opaque tape, covering her eyes. The single question is whether such acts,

[4]Section 1170.84, enacted in 1990, provides: "Upon conviction of any serious felony, listed in subdivision (c) of section 1192.7, it shall be considered a circumstance in aggravation of the crime . . . if, during the course of the serious felony, the person engaged in the tying, binding, or confining of any victim." This language also had not been construed.

[5]Were there a finding of fact, that being blindfolded does not impede a sighted person's freedom of movement, we would in any event disregard such finding as without credible support in the record. It appears, however, that the magistrate based his conclusion of inapplicability on the belief the statute required an intent by the criminal to restrain his victim's free movement, a point we reject in the discussion *post.*

unaccompanied by tying or binding of the feet or hands, come within the statute. As the issue is whether the undisputed facts support the charged allegation, the question is one of law, not fact. Because the magistrate's conclusion that the circumstances of the allegation were not made out was a legal one, our review thereof is nondeferential. (See, e.g., *People v. Mayfield* (1997) 14 Cal.4th 668, 733 [60 Cal.Rptr.2d 1, 928 P.2d 485]; *Truck Ins. Exchange v. Pozzuoli* (1993) 17 Cal.App.4th 856, 859 [21 Cal.Rptr.2d 650].)

 The fundamental consideration guiding our determination of the question is this: we must adhere to the plain meaning of the statutory language in question. The Supreme Court has often reiterated "the rule that courts should give statutory words their plain or literal meaning unless that meaning is inconsistent with the legislative intent apparent in the statute. [Citation.]" (*People v. Allen* (1999) 21 Cal.4th 846, 859 [89 Cal.Rptr.2d 279, 984 P.2d 486].)

 Turning to the words of the statute, we consider first tying. The verb "tie" is defined as "to bind, fasten, make fast (one thing to another, or two or more things together) with a cord, rope, band, or the like . . . to confine (a person or animal) by fastening to something," while "bind" is defined in its two principal senses as "To tie fast" and "To tie about, bandage, gird, encircle." The noun "tie" itself derives from Old Norse "taug," or rope. (Oxford English Dict. (compact ed. 1971) p. 3319.)[6]

 Clearly, while the words "tying" and "binding" may sometimes be used as synonyms, "courts must avoid a construction that would render related provisions nugatory. [Citation.]" (*People v. Allen, supra*, 21 Cal.4th at p. 860.) Thus, we are constrained to read the phrase "tying or binding of the victim" as referring to related but differing activities, and we observe further that the additional criminal liability under section 667.61, subdivision (e)(6) may be imposed for either tying *or* binding.

 Further, the other sections of the subdivision must be considered along with the present one, because " '[i]t is fundamental that legislation should be construed so as to harmonize its various elements without doing violence to its language or spirit.' [Citation.]" (*People v. Garcia* (1999) 21 Cal.4th 1, 6 [87 Cal.Rptr.2d 114, 980 P.2d 829].)

 Other circumstances which subject perpetrators of specified sexual offenses to an enhanced sentence under section 667.61, subdivision (e)

---

[6]Other sources, such as Webster's Third New International Dictionary, provide definitions of the verbs "tie" and "bind" similar to those from the Oxford English Dictionary that are cited in the text, *ante.*

include the kidnapping of the victim, subdivision (e)(1); committing the offense during a burglary, subdivision (e)(2); inflicting great bodily injury on the victim, subdivision (e)(3); using a deadly weapon, subdivision (e)(4); and forcibly administering a controlled substance to the victim, subdivision (e)(7). (*People v. DeSimone* (1998) 62 Cal.App.4th 693, 697 [73 Cal.Rptr.2d 73].) The common theme of all these proscribed actions is clear: they increase the victim's vulnerability.

"[W]hen the objectives of the injunction are considered and the words of the provision are read in context" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1118 [60 Cal.Rptr.2d 277, 929 P.2d 596]), the common theme of the entire subdivision is to provide an increased punishment for those sexual assaults carried out under circumstances such as to render the victim of the offense particularly vulnerable.[7]

While the increased vulnerability of a victim whose hands or feet (or both) are tied is immediately clear, we cannot in any logical manner distinguish such an enhanced vulnerability from that inherent in being bound so as to be unable to see. In both instances the victim's ability to flee her attacker, to resist the assault, or to summon help is severely impaired, and in the case of blindfolding, there is added vulnerability flowing from the psychological stresses associated with sensory deprivation.[8]

Further, while Campbell argues that his intention was to prevent his identification rather than to render his victim more vulnerable, the statute does not refer at all to the attacker's objective in performing prohibited acts, and any such particular intention cannot be controlling. (See *People v. Jones, supra*, 58 Cal.App.4th at pp. 716-717 [reaching the same conclusion with respect to § 667.61, subd. (d)(2)].) Thus, while it may be true that Campbell's goals included not being identified by K.M., the means which Campbell chose to effectuate this goal increased his victim's vulnerability, and came well within the scope of the prohibition on tying or binding of the victim.

Providing for an enhanced sentence for one who, in the course of committing an offense such as the forcible sodomy herein, "engage[s] in the

---

[7]It has been observed by this court that the phrase "particularly vulnerable" is sufficiently certain to support enhanced criminal liability. (*People v. Smith* (1979) 94 Cal.App.3d 433, 436 [156 Cal.Rptr. 502]; see also *People v. Clark* (1990) 50 Cal.3d 583, 638 [268 Cal.Rptr. 399, 789 P.2d 127].)

[8]In a chilling passage in Isabel Allende's The House of the Spirits, a woman arrested by the military after the assassination of Salvador Allende is blindfolded during her interrogation and torture: "[S]he no longer knew if she was dreaming or where this stench . . . was coming from . . . . A brutal slap knocked her to the floor. Violent hands lifted her to her feet. . . . She was completely overcome by fear." (Allende, The House of the Spirits (1986) pp. 406-407.)

tying or binding of the victim" (§ 667.61, subd. (e)(6)) necessarily has to do with the Legislature's recognition that such acts render the victim of a sexual assault particularly vulnerable, in that they facilitate the offense while further disabling the victim. (See, e.g., *People v. Spencer* (1996) 51 Cal.App.4th 1208, 1223 [59 Cal.Rptr.2d 627].) This amplification of distress, in an already terrifying and degrading situation, by tying or binding the victim is the epitome of what we have termed a "cheap shot" (*People v. Smith, supra,* 94 Cal.App.3d at p. 436), thereby making more culpable an already serious and violent sexual offense.

Because Campbell's actions here came within the statutory prohibition on tying or binding of the victim during the course of the forcible sodomy he committed, in that binding the victim's head with tape rendered her more vulnerable, the superior court erred in setting aside the tying or binding allegation.

## II. *Vagueness*

■ Campbell argues the above reading of the statute necessarily means that the statue itself is so vague that ordinary men could not readily ascertain what conduct might be prohibited thereby. We do not agree.[9]

The requirement of adequate specificity in a penal statute is an essential element of due process. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the state commands or forbids." (*Lanzetta v. New Jersey* (1939) 306 U.S. 451, 453 [59 S.Ct. 618, 619, 83 L.Ed. 888], fn. omitted.)[10] In resolving a challenge that a statute is vague or uncertain, however, "[t]he starting point of our analysis is 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. [Citations.] A statute should be

---

[9]Campbell offers the hypothetical example of a criminal who places tape only over the victim's eyes as an example of conduct which is equivalent to his own, but outside the proscription on tying or binding. First, a penal statute need not address all imaginable matters in order to withstand a void-for-vagueness challenge. (*People v. Ervin* (1997) 53 Cal.App.4th 1323, 1330 [62 Cal.Rptr.2d 231]; *People v. Camillo* (1988) 198 Cal.App.3d 981, 996 [244 Cal.Rptr. 286].) Second, while we do not decide matters not before us, it is not at all apparent that binding a victim's eyes shut so that she cannot see to defend herself or flee is conduct that *necessarily* would fall outside the statutory prohibition.

[10]Campbell also argues the statute violates another essential component of due process in that it fails to provide adequate guidance for evenhanded law enforcement. (*Grayned v. City of Rockford* (1972) 408 U.S. 104, 108-109 [92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222].) Because we find the statute adequately describes those acts that are prohibited, in terms that can be understood by all, whether offenders or law enforcement officers, we need not address this argument further.

sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.]" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 568 [20 Cal.Rptr.2d 341, 853 P.2d 507]; see also *People v. Hamilton* (1998) 61 Cal.App.4th 149, 154-155 [71 Cal.Rptr.2d 359]; and *People v. Ewing* (1999) 76 Cal.App.4th 199, 206-207 [90 Cal.Rptr.2d 177].)

A reasonable and practical construction of the phrase "tying or binding" necessarily includes only those actions which render a victim more particularly vulnerable,[11] whether by restricting her or his freedom of movement or by depriving her or him of one or more senses. Under such a practical reading of the statute, one aware of the statutory proscription[12] against the tying or binding of the victim may readily determine, using no more than the normal and customary meaning of the words, that actions such as wrapping the victim's head in tape (*binding* the victim's head) will result in the perpetrator's exposure to an enhanced sentence for the underlying sexual offense committed.[13] Under the holdings of the authorities set out above, no more is required. Because the statute in question sufficiently apprises persons of ordinary intelligence what conduct is prohibited, we reject Campbell's assertions of unconstitutional vagueness.

### DISPOSITION

The order setting aside the tying or binding allegation is reversed.

McIntyre, J., and O'Rourke, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 25, 2000. Mosk, J., was of the opinion that the petition should be granted.

---

[11]Campbell argues the relation between tying or binding and vulnerability is not a logical one. When section 667.61, subdivision (e)(6) is read in context with the other parts of the subdivision, however, as it must be, no *other* conclusion is logical.

[12]See, e.g., *People v. Hamilton, supra,* 61 Cal.App.4th at pages 155-156; *People v. Antoine* (1996) 48 Cal.App.4th 489, 496-497 [56 Cal.Rptr.2d 530].

[13]As the People point out, the Supreme Court has referred to a victim (albeit in a murder prosecution) whose "head was wrapped in a bound towel . . . ." (*People v. Wash* (1993) 6 Cal.4th 215, 230 [24 Cal.Rptr.2d 421, 861 P.2d 1107].)